On petition to review ballot title filed February 25, 2008; considered and under advisement on April 30, ballot title referred to the Attorney General for modification June 19, modified ballot title certified July 23, 2008
(345 Or 160)

Tom CHAMBERLAIN
& Barbara Byrd,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S055744)

189 P3d 6

Margaret S. Olney, of Smith, Diamond & Olney, Portland, filed the petition for review.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed the answering memorandum for respondent. With her on the memorandum were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

## KISTLER, J.

Petitioners seek review of the Attorney General's certified ballot title for Initiative Petition 26 (2010). *See* ORS 250.085(2) (specifying requirements for seeking review of certified ballot title). This court reviews the certified ballot title to determine whether it substantially complies with ORS 250.035(2). *See* ORS 250.085(5) (stating standard of review). For the reasons explained below, we refer the ballot title to the Attorney General for modification.

Initiative Petition 26, if enacted, would add the following text to the Oregon Revised Statutes:

"No employee shall be required to pay money to a union or be represented by a union unless a majority of the subject employees have voted in a secret ballot election to be represented by the union. Due to the serious potential for coercion and undue pressure, an employee's card check authorization shall not be deemed a valid vote for unionization."

The Attorney General certified the following ballot title for Initiative Petition 26:

"EMPLOYEES NOT REQUIRED TO BE REPRESENTED BY UNION, SHARE REPRESENTATION COSTS ABSENT SECRET-BALLOT ELECTION

"RESULT OF 'YES' VOTE: 'Yes' vote excuses employees from being represented by union, sharing representation costs, unless majority of 'subject employees' (undefined) authorized union representation in secret-ballot election.

"RESULT OF 'NO' VOTE: 'No' vote retains law: union approved by employees (by election or written authorization) represents all employees; all employees may be required to share representation costs.

"SUMMARY: Under current law, employees may choose union representation by majority of votes cast in a secret-ballot election or through employer recognition based on written authorizations from majority of employees. Representation continues unless 30 percent of employees show support for election to decertify union and majority vote to decertify. Selected union must represent all employees, regardless of union membership. A collective bargaining agreement may require all employees to

contribute to representation costs. Under measure, no employee may be required to be represented by union or to contribute to costs of representation unless a majority of 'subject employees' (not defined) have voted in a secret-ballot election to be represented by the union. Employee's 'card check authorization' (not defined) is not a valid vote. Other provisions."

Petitioners challenge the caption, the "yes" vote result statement, and the summary.

■ Petitioners argue that the caption in this case is deficient for the same reasons that we held the caption in *Caruthers v. Myers*, 344 Or 596, 189 P3d 1 (2008), deficient. *See* ORS 250.035(2)(a) (requiring a "caption of not more than 15 words that reasonably identifies the [measure's] subject matter"). In that case, as in this one, the Attorney General sought to identify the subject matter of the measure by describing the measure's major effects. *See Kain v. Myers*, 336 Or 116, 121, 79 P3d 864 (2003) (noting that method as one way of identifying a measure's subject matter). In doing so, however, the Attorney General has overstated one effect of the measure. The measure would not relieve private sector unions of their federal obligation to represent all the employees in the bargaining unit, and its effect on public sector unions' comparable state obligation is unclear. The caption is deficient in overstating that effect. *See Caruthers*, 344 Or at 603-04 (explaining that proposition). We recognize that the measure in this case is more complex than the measure at issue in *Caruthers* and thus presents a more difficult challenge for the Attorney General to identify its subject matter in 15 words. However, the caption, as presently stated, is not accurate and must be referred.

■ Petitioners also challenge the "yes" vote result statement. They contend that it is deficient for the same reasons that we discussed in *Caruthers*. *See* ORS 250.035(2)(b) (requiring a "simple and understandable statement of not more than 25 words that describes the result if the state measure is approved"). We agree. Petitioners also argue that the "yes" vote result statement should alert voters to the fact that the proposed measure would effect a significant change in secret-ballot elections by replacing the current simple majority standard for winning elections with an absolute

majority standard. As petitioners note, existing law governing public sector union elections provides that the winner of a secret-ballot election is the entity that obtains the support of a "majority of the votes cast in [the] election." ORS 243.686(4). By contrast, the measure provides that "a majority of the subject employees" must vote to be represented by a union before the employees can be required to be represented by the union and share representation costs.

The Attorney General agrees that "this measure would significantly change the way the majority vote is determined in union representation elections." He argues, however, that the "yes" vote result statement adequately addresses the change by stating that the measure requires a "majority of 'subject employees' (undefined)" to elect union representation.

The decision in *Crumpton v. Kulongoski*, 321 Or 279, 896 P2d 1211 (1995), answers the parties' dispute. The proposed measure in *Crumpton* would have amended the state constitution to replace the simple majority requirement for passage of ballot measures that raise government revenue with an absolute majority requirement. *Id.* at 281. As this court explained, the measure would have replaced the "traditional rule * * * that a majority of those voting will determine the outcome of an election" with "a new rule" under which "all persons who are eligible to vote * * * participate in the election" whether they vote or not. *Id.* at 281-82. Under the measure, "votes that are not cast at all * * * [would] count as 'no' votes" instead of not counting. *Id.* at 282.

The ballot title question[1] in *Crumpton* stated that the measure would bar passage of all revenue-raising measures "submitted to voters unless majority of registered voters approve." *Id.* at 281. This court held that the question failed to comply with statutory standards because "it fail[e]d to inform the voters" about the "very significant change" that the measure would have made regarding the type of majority required to raise government revenue. *Id.* at 282-83. In the

---

[1] At the time of this court's decision in *Crumpton*, the "yes" vote result statement and "no" vote result statement were combined in a single question. The legislature later amended the statute to omit the question in favor of separate "yes" and "no" vote result statements. *See* 1995 Or Laws, ch 534, § 1 (making change).

court's view, the reference to a "majority of registered voters" did not "effectively" highlight that change because it did not "make it clear that, for future passage of [revenue-raising ballot measures], this measure will require 50 percent plus one of all registered voters, including those who do not vote, not 50 percent plus one of all registered voters who vote." *Id.* at 282 (some emphasis omitted).

The change that the proposed measure in *Crumpton* would have imposed on the majority requirement for ballot measures raising government revenue is identical to the change that the proposed measure in this case would impose on the majority requirement for union representation elections. Following *Crumpton*, we hold that the "yes" vote result statement must effectively highlight the shift from a simple majority standard to an absolute majority standard that this measure would impose. We also conclude that the "yes" vote result statement fails to effectively highlight that change. It is true, as the Attorney General notes, that the "yes" vote result statement refers to a "majority of 'subject employees' (undefined)." That reference, however, is similar to the provision in the question in *Crumpton* referring to a "majority of registered voters." Just as the latter reference failed to make clear the nature and scope of the change that the proposed measure in *Crumpton* would have imposed, the wording on which the Attorney General relies in this case also is insufficient.

■  Finally, petitioners challenge the summary. *See* ORS 250.035(2)(d) (requiring a "concise and impartial statement of not more than 125 words summarizing the state measure and its major effect"). Petitioners argue that the summary, like the "yes" vote result statement, is insufficient for the reasons stated in *Caruthers*. We agree. They also argue that the summary is insufficient because it fails to effectively highlight the change that the proposed measure would impose on the type of majority necessary to win a union representation election. The Attorney General contends that the summary adequately addresses that change because it contains one statement mentioning that, "[u]nder current law, employees may choose union representation by majority of votes cast in secret-ballot election," and a second statement indicating

that the measure requires the support of "a majority of 'subject employees' (not defined)."

In our view, the two statements on which the Attorney General relies do not satisfy *Crumpton*, *viz.*, they do not "effectively" highlight the significant change that the measure would make. Although the first statement identifies the current state of the relevant law and the second statement identifies what the relevant law will be if the measure is enacted, the first sentence is located at the beginning of the summary and the other at the end. Nothing in the summary highlights the causal connection between the measure's enactment and the change described in the statements, or indeed states that there will be any change. Following *Crumpton*, we hold that the summary must be modified.[2]

Ballot title referred to the Attorney General for modification.

---

[2] We have considered other challenges that petitioners make to the ballot title and reject them without further discussion.