DEHOOG, P. J.
*1021 *757 Plaintiff in this public records case is the publisher of the Woodburn Independent newspaper. After learning of the arrest of a former Woodburn-area resident on allegations that he had sexually abused a minor, one of plaintiff's reporters asked the police department of the City of Salem, defendant in this case, to release the record of that arrest. See ORS 192.345(3) (requiring disclosure to the public of "the record of an arrest").[1] The city refused to release any information about the arrest, asserting that all reports related to the police investigation and the subsequent arrest were "compiled under" statutes governing certain reports of child abuse and mandating that the reports be investigated; consequently, the city maintained, all the information in those reports, including all information regarding the arrest, was excluded from disclosure to the public. See ORS 419B.035 (excluding "reports and records compiled under the provisions of ORS 419B.010 to 419B.050" from public disclosure). When plaintiff subsequently filed a declaratory judgment action against the city, the trial court adopted the city's interpretation of the relevant statutes, granted the city's motion for summary judgment, denied plaintiff's motion for summary judgment, and entered a general judgment of dismissal.[2]
On appeal, plaintiff argues that the trial court erred in denying its motion for summary judgment and granting summary judgment to the city, because the city failed to show that the arrest information that plaintiff had requested was in a public record exempt from disclosure under ORS 419B.035. As explained below, we agree. Accordingly, we reverse and remand.
*758 When error is assigned to both rulings on cross-motions for summary judgment, we review both rulings to determine whether there are any disputed issues of material fact and, if not, whether either party was entitled to prevail as a matter of law. Port of Portland v. Ore. Center for Environ. Health , 238 Or. App. 404, 408, 243 P.3d 102 (2010), rev. den. , 350 Or. 230, 253 P.3d 1079 (2011).
The facts are undisputed. In February 2015, Francke, a reporter with plaintiff, requested that the city's police department disclose the "full investigation/arrest report" regarding an incident report dated January 14, 2015, and involving Klain Joseph Pippert. The city denied Francke's request, explaining that "[t]his case involves a juvenile victim of abuse. In accordance with the personal privacy exemption of ORS 192.502 ; ORS 419B.035(1) & 419B.005, the report is not available for release." Francke responded by submitting a second request the next day, this time seeking "case/arrest, redacted as necessary to protect juvenile victims and otherwise provided by ORS." The city responded, "DENIED PER LEGAL DEPT. & OR. ORS." Francke petitioned the Marion County District Attorney to review the denial. See ORS 192.415 (requiring district attorneys to review certain denials of public records requests). Relying on ORS 419B.035(1), the district attorney agreed with the city that the records could not be disclosed.
Plaintiff then filed this declaratory judgment action, alleging the above facts and requesting an order directing the city "to immediately provide a redacted copy of the City of Salem Police Department's arrest report relating to Klain Joseph Pippert (Incident No. 15002198), removing from such report any identifying information concerning *1022 any juvenile." In its answer, the city contended that, to the extent that it had materials responsive to plaintiff's request, they were not disclosable:
"[N]o document exists entitled 'arrest report' as requested by Plaintiff. There are incident and supplemental reports prepared by personnel at the Salem Police Department; those reports have the number SMP 15002198 assigned to them. Defendant City of Salem has regarded Plaintiff's request for an 'arrest report' as a request to obtain the incident and supplemental reports numbered SMP 15002198.
*759 Defendant City of Salem asserts that the reports numbered SMP 15002198 may not be disclosed in either redacted or unredacted form."
Both parties moved for summary judgment. In its motion for summary judgment, the city reasoned that ORS 419B.035(1) prohibits disclosure of any documentation related in any way to an investigation of child abuse; as a result, all of the reports responsive to plaintiff's request-those numbered SMP 15002198 in the police department's case files-were exempt from disclosure.[3] Moreover, the city asserted, even if ORS 419B.035(1) allowed it to disclose some part of the case file, "there is no separate document entitled 'arrest report,' only incident and supplemental reports. See Defendant's Answer, paragraph 6. Therefore, notwithstanding the prohibitions set forth in ORS 419B.035, disclosure of an 'arrest report' is impossible." The only materials that the city submitted in support of its own motion or in response to plaintiff's cross-motion for summary judgment were copies of plaintiff's public records requests and the city's corresponding denials.
Plaintiff's position, on the other hand, was that it did "not seek investigatory information beyond" the items that ORS 192.345(3) lists as comprising "the record of an arrest or the report of a crime," which include biographical information about the arrested person, the offense involved, the conditions of release, the identity of and biographical information concerning the complaining party and the victim, the agency conducting the investigation and the investigation's length, the circumstances of the arrest, and any information necessary "to enlist public assistance in apprehending fugitives from justice."[4] Plaintiff contended that the arrest report-or, in plaintiff's words, "whatever report contains the arrest information" it had requested-"is not a *760 report compiled under ORS 419B.010 to 419B.050" and thus potentially excluded from disclosure, because "[t]he arrest record focuses on the arrestee and the circumstances of the arrest," while "a child abuse report does not deal with criminal charges." Plaintiff agreed with the city, however, that the sexual abuse at issue constituted child abuse for purposes of the child-abuse-reporting statutes. See ORS 419B.005(1)(D) (defining "abuse" to include "[s]exual abuse, as described in ORS chapter 163").
After a hearing, the trial court ruled that "any report, any report of arrest, any kind of report related to" child abuse, "is protected" and, therefore, that ORS 419B.035 prohibits its disclosure. Based on that understanding, the court granted the city's motion for summary judgment and denied plaintiff's motion.
On appeal, the parties reprise the arguments that they made to the trial court. Before addressing those arguments, we summarize the relevant law.
Oregon has a strong public policy in favor of disclosure of public records.
"Writings coming into the hands of public officers in connection with their official functions should generally be accessible to members of the public so that there will be an opportunity to determine whether those *1023 who have been entrusted with the affairs of government are honestly, faithfully and competently performing their function as public servants."
American Civil Liberties Union v. City of Eugene , 360 Or. 269, 281, 380 P.3d 281 (2016) ( ACLU ) (internal quotation marks omitted). That public policy is codified in ORS 192.314(1), which provides that "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.338, 192.345 and 192.355." In a proceeding brought to require a public body to disclose public records, "the burden is on the public body to sustain its action." ORS 192.431(1).
Of course, the general public policy of disclosure "is not without qualification." ACLU , 360 Or. at 281, 380 P.3d 281 (internal *761 quotation marks omitted). The exemptions from disclosure set out in ORS 192.338, ORS 192.345, and ORS 192.355 provide that qualification. Two of those exemptions are relevant here.
The first relevant exemption specifically addresses "the record of an arrest." Although "[i]nvestigatory information compiled for criminal law purposes" is generally "exempt from disclosure * * * unless the public interest requires disclosure in the particular instance," "[t]he record of an arrest or the report of a crime shall be disclosed unless and only for so long as there is a clear need to delay disclosure in the course of a specific investigation, including the need to protect the complaining party or the victim," ORS 192.345(3).
"[T]he record of an arrest or the report of a crime includes, but is not limited to:
"(a) The arrested person's name, age, residence, employment, marital status and similar biographical information;
"(b) The offense with which the arrested person is charged;
"(c) The conditions of release pursuant to ORS 135.230 to 135.290 ;
"(d) The identity of and biographical information concerning both complaining party and victim;
"(e) The identity of the investigating and arresting agency and the length of the investigation;
"(f) The circumstances of arrest, including time, place, resistance, pursuit and weapons used; and
"(g) Such information as may be necessary to enlist public assistance in apprehending fugitives from justice."
Id.
The second relevant exemption is ORS 192.355(9)(a), which exempts from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." One provision of Oregon law that prohibits disclosure of public records is ORS 419B.035(1), which provides:
*762 "Notwithstanding the provisions of ORS 192.001 to 192.170, 192.210 to 192.478 and 192.610 to 192.810 relating to confidentiality and accessibility for public inspection of public records and public documents, reports and records compiled under the provisions of ORS 419B.010 to 419B.050 are confidential and may not be disclosed except as provided in this section ."[5]
(Emphasis added.)
As noted, the parties' arguments on appeal echo those that they made to the trial court. Plaintiff contends, among other things, that the trial court erred in ruling that, as a matter of law, the information that plaintiff had requested regarding Pippert's arrest was contained in a report or record "compiled under the provisions of ORS 419B.010 to 419B.050" within the meaning of ORS 419B.035. The city defends the trial court's interpretation of that statutory text as including the requested information.
Before turning to our analysis, we pause to clarify that Francke's second records request *1024 sought only the information listed in ORS 192.345(3) other than the identity of or biographical information concerning the victim and the complaining party. See 293 Or. App. at 759 n. 4, 429 P.3d at 1022 n. 4. Although, as discussed below, the city asserts-without factual support-that the report or reports containing that information are stored with other reports about the case, it does not dispute that Francke's second request was for the report or reports that contain arrest information. And it is the denial of that request that plaintiff challenged before the district attorney and in the declaratory judgment action, and that is at issue on appeal.
On both parties' motions for summary judgment, the city bore the burden of proving that the requested records were exempt from disclosure. ORS 192.431(1) ("[T]he burden is on the public body to sustain its action."); ORCP 47 C ("The adverse party has the burden of producing *763 evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."); see also Two Two v. Fujitec America, Inc. , 355 Or. 319, 324-25, 325 P.3d 707 (2014). But the city chose not to submit the disputed reports into the record or provide any evidence of their contents; the city proved no facts at all about the reports. Instead, the city merely asserted that the arrest information was exempt from disclosure under ORS 419B.035 because that information was "compiled under the provisions of ORS 419B.010 to 419B.050." On this record, then, the only question before us is whether ORS 419B.035 excludes from disclosure a report or reports containing the arrest information: Pippert's biographical information, the offense with which he was charged, the conditions of release, the identity of the investigating and arresting agency, the length of the investigation, and the circumstances of arrest. ORS 192.345(3)(a)-(c), (e), (f).
The parties' arguments present a question of statutory interpretation, which we review for legal error. State v. Branam , 220 Or. App. 255, 258, 185 P.3d 557, rev. den. , 345 Or. 301, 194 P.3d 147 (2008). In doing so, we apply the analytical framework set out in State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Our goal is to discern the intention of the legislature, and we do so by first evaluating the text of the statute in context. Id. at 171, 206 P.3d 1042. We also consider legislative history insofar as it is useful to our analysis. Id. at 172, 206 P.3d 1042. If ambiguity remains, we may resort to general maxims of statutory construction to resolve it. Id.
Before considering the city's express statutory argument, we briefly address an argument that is implicit in the city's briefing and appears to underlie the trial court's ruling. The city appears to contend that every document containing any information about child abuse is a "report of child abuse" within the meaning of ORS 419B.015(1) and therefore is excluded from disclosure by ORS 419B.035.[6] To *764 the extent that the trial court relied on that interpretation, we disagree.
ORS 419B.010(1) imposes a duty to report child abuse. Specifically, it requires a "public or private official," as defined by the statute, "having reasonable cause to believe that any child with whom the official comes in contact has suffered abuse or that any person with whom the official comes in contact has abused a child [to] immediately report or cause a report to be made in the manner required in ORS 419B.015." ORS 419B.010(1) ; see ORS 419B.005(5) (defining "public or private official" to include practitioners of 31 professions and occupations). In turn, ORS 419B.015 imposes procedural and substantive requirements on child abuse reports:
"A person making a report of child abuse, whether the report is made voluntarily or is required by ORS 419B.010, shall make an oral report by telephone or otherwise to the local office of the Department of Human Services, to the designee of the department or to a law enforcement *1025 agency within the county where the person making the report is located at the time of the contact. The report shall contain, if known, the names and addresses of the child and the parents of the child or other persons responsible for care of the child, the child's age, the nature and extent of the abuse, including any evidence of previous abuse, the explanation given for the abuse and any other information that the person making the report believes might be helpful in establishing the cause of the abuse and the identity of the perpetrator."
ORS 419B.015(1)(a). The receipt of a child abuse report triggers other provisions of ORS 419B.010 to 419B.050, which in turn impose various investigative duties on DHS and law enforcement agencies. See, e.g. , ORS 419B.015(1)(b) (requiring agencies to notify each other upon receipt of "a report of child abuse"); ORS 419B.020(1)(a) ("If [DHS] or a law enforcement agency receives a report of child abuse, the department or the agency shall immediately * * * [c]ause an investigation to be made to determine the nature and cause of the abuse of the child."); ORS 419B.023 (specifying in detail certain duties of a person conducting an investigation under ORS 419B.020 ).
*765 That statutory context demonstrates that the term "report of child abuse" in ORS 419B.015(1) refers only to a report of child abuse made in accordance with the reporting procedure set out in ORS 419B.015(1) and not to every document, including one generated during an investigation, that happens to include information related to abuse. Assuming that "report of child abuse" in ORS 419B.015(1) refers only to a report made in accordance with that procedure, then the statutory scheme operates sensibly, with the receipt of each report triggering a duty to investigate. If, on the other hand, the term "report of child abuse" referred to any document containing information regarding child abuse, then the scheme would become unworkable; receipt of any piece of paper or electronic document in which an investigator (or anyone else) had memorialized anything about an incident of child abuse would again trigger the duty to investigate. ORS 419B.020(1)(a) ("If [DHS] or a law enforcement agency receives a report of child abuse, the department or the agency shall immediately * * * [c]ause an investigation to be made to determine the nature and cause of the abuse of the child."). That understanding of the statutory scheme is implausible. Thus, we reject the city's implicit reading that "report of child abuse" in ORS 419B.015(1) includes every document containing any information about child abuse.
We turn to the city's express textual argument. The city contends that information about an arrest relating to child abuse is a report or record "compiled under the provisions of ORS 419B.010 to 419B.050," because any criminal investigation of child abuse and any resulting arrest is conducted "under" the provisions of ORS 419B.010 to 419B.050. Thus, in the city's view, all records collected or generated during an investigation related to child abuse in any way are "compiled under the provisions of ORS 419B.010 to 419B.050."
Again, we disagree. As further detailed below, ORS 419B.010 to 419B.050 mandate that child abuse be reported and that each report be investigated by DHS or law enforcement. Those provisions do not govern or even address the arrest of a perpetrator. Thus, even though a child abuse report and resulting investigation may lead, *766 ultimately, to the arrest of a perpetrator, it does not follow that the arrest is made "under the provisions of ORS 419B.010 to 419B.050." Similarly, because those provisions neither authorize nor require any agency to keep records of such arrests, it would defy common understanding to conclude that reports containing information about an arrest, like the ones sought here, are reports or records "compiled under" those provisions.
That preliminary assessment of the city's argument is borne out by the plain text of the statutes. As set out above, the relevant text of ORS 419B.035(1) provides that "reports and records compiled under the provisions of ORS 419B.010 to 419B.050 are confidential and may not be disclosed except as provided in this section." That text has remained the same since 1971, when it was taken wholesale from a statute requiring medical personnel to report suspicious injuries *1026 and made part of the first freestanding child-abuse-reporting law. See Or. Laws 1971, ch. 451, § 7; ORS 146.780(1), (2) (1969).[7] Although, " '[i]n construing statutes, we do not simply consult dictionaries and interpret words in a vacuum,' " here, we find it helpful to keep common definitions of "compile" and "under" in mind as we begin our analysis. State v. Gonzalez-Valenzuela , 358 Or. 451, 461, 365 P.3d 116 (2015) (quoting State v. Cloutier , 351 Or. 68, 96, 261 P.3d 1234 (2011) (brackets in Gonzalez-Valenzuela )). "Compile" means "to collect and assemble (written material or items from various sources) into a document or volume or a series of documents or volumes." Webster's Third New Int'l Dictionary 464 (unabridged ed. 2002). "Under," as used here, means "required by," "in accordance with," or "bound by." Id. at 2487. Thus, the phrase "reports and records compiled under the provisions of ORS 419B.010 to 419B.050" refers to reports and records collected and assembled into a document or volume as required by or in accordance with the provisions of ORS 419B.010 to 419B.050.
So understood, the disputed text cannot be read in isolation because its scope depends entirely on what the *767 provisions of ORS 419B.010 to 419B.050 require or authorize. Those provisions were first enacted in the same bill that contained the disputed text. Or. Laws 1971, ch. 451, §§ 3-8. And, as those provisions have been amended over the years, the scope of "reports and records compiled under" them has also changed. Despite numerous amendments, however, the basic scheme now codified as ORS 419B.010 to 419B.050 has remained the same since its inception: Certain people must make reports when they encounter child abuse, a public agency must investigate each report promptly, and DHS must maintain a central registry of founded reports. See Or. Laws 1971, ch. 451 (enacting scheme, first codified as ORS 418.740 to 418.775 ); Or. Laws 1993, ch. 546, §§ 12-22 (repealing scheme and reenacting it as ORS 419B.010 to 419B.050 ).
As explained above, ORS 419B.010 and ORS 419B.015 provide for reports of child abuse. When such a report is made, both DHS and local law enforcement are notified. See ORS 419B.015(1) (permitting report to be made to DHS or a law enforcement agency; requiring the recipient of the report to notify the other agency); ORS 419B.017 (providing for time limits on notifications between DHS and law enforcement agencies). DHS or the law enforcement agency must investigate every report: "If [DHS] or a law enforcement agency receives a report of child abuse, the department or the agency shall immediately * * * [c]ause an investigation to be made to determine the nature and cause of the abuse of the child." ORS 419B.020(1)(a). The investigations are conducted by trained personnel using protocol and procedures developed by county multidisciplinary child abuse teams that include law enforcement and DHS personnel, as well as "school officials, local health department personnel, county mental health department personnel who have experience with children and family mental health issues, child abuse intervention center workers, if available, and juvenile department representatives, as well as others specially trained in child abuse, child sexual abuse and rape of children investigation." ORS 418.747(1), (4). If an investigation shows "reasonable cause to believe that a child's condition was the result of abuse even if the cause remains unknown," local DHS offices "shall report to the state registry in writing,"
*768 and DHS must catalog those reports "both as to the name of the child and the name of the family." ORS 419B.030(1).
One use of the material collected during the investigation is criminal prosecution of the perpetrator of the abuse. To some extent, the relevant provisions evince concern for the preservation of evidence; for example, the investigating agency may photograph "any child subject of the investigation for purposes of preserving evidence of the child's condition at the time of the investigation."
*1027 ORS 419B.028(1). Such evidence could provide support for a petition for dependency jurisdiction in the juvenile court and could be relevant in a criminal prosecution. Moreover, ORS 419B.040 notes the possibility of a "judicial proceeding resulting from a report made pursuant to ORS 419B.010 to 419B.050" and abolishes certain evidentiary privileges in such a proceeding. See also ORS 419B.045(1) ("[A] school administrator or school staff member [who is present when a child is interviewed at school] may testify at any subsequent court proceeding relating to the investigation and may be interviewed by the respective litigants prior to any court proceeding.").
However, even though those provisions recognize that investigators may collect information to use as evidence in future proceedings, they do not provide for or require arrests. Instead, other procedural and substantive statutes govern the arrest and prosecution of perpetrators, should a report of child abuse lead to those outcomes. See, e.g. , ORS 133.140 (content and form of arrest warrant); ORS 133.310 (standard for warrantless arrest by peace officer); ORS 163.415 - 163.427 (defining sexual abuse crimes).
Nor do the provisions authorize or require the investigating agency to compile records of subsequent arrests or prosecutions. To the contrary, the provision governing the central registry appears to contemplate that DHS-one of the two main investigating agencies-may elect not to gather such records. ORS 419B.030(2) ("When [DHS] provides specific case information from the central state registry, [DHS] shall include a notice that the information does not necessarily reflect any subsequent proceedings that are not within the jurisdiction of the department.").
*769 Of course, law enforcement agencies can be expected to keep records of arrests related to child abuse. See, e.g. , OAR 166-200-0350(23), (41) (providing retention periods for records of criminal arrests and incident case files). Nevertheless, it is not the provisions of ORS 419B.010 to 419B.050 that authorize or require the retention of those records. When law enforcement agencies collect and store arrest records, they necessarily act under some source of authority, but not "under the provisions of ORS 419B.010 to 419B.050," which, as noted, do not provide for such things. Accordingly, the reports kept by the city's police department recounting Pippert's arrest were not records or reports "compiled under the provisions of ORS 419B.010 to 419B.050," and the trial court erred in concluding otherwise.
Having concluded that the trial court erred in holding that ORS 419B.035 excluded the requested record or records from disclosure, we briefly address the city's alternative view that, even if a record of Pippert's arrest is not "compiled under the provisions of ORS 419B.010 to 419B.050," the city nevertheless had no disclosure obligation because it has no "record of an arrest" regarding Pippert.
At oral argument on appeal, counsel for the city explained that the city "compile[s] all the information into what we generally call a police report, incident report, that's given a number. All the information is in a single record, one document." Thus, the city contends, "[w]e don't have a separate arrest report to give."
There is no support in the summary judgment record for that factual assertion. As explained above, in responding to plaintiff's motion for summary judgment, the city made that assertion and cited its answer as support. However, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the mere allegations or denials of that party's pleading." ORCP 47 D; accord Brown v. Gatti , 195 Or. App. 695, 705, 99 P.3d 299 (2004), rev'd in part on other grounds , 341 Or. 452, 145 P.3d 130 (2006). We therefore reject the city's assertion that it cannot release a report of Pippert's arrest *770 because it has stored that report in a single "document" with other reports that are exempt from disclosure.[8] *1028 The city has admitted that it has a report or reports regarding Pippert's arrest, and the record on summary judgment does not demonstrate that the report or reports containing the requested information were "compiled under the provisions of ORS 419B.010 to 419B.050." ORS 419B.035. Thus, the trial court erred in granting summary judgment for the city.
For the same reason, the trial court erred in denying plaintiff's motion for summary judgment. As explained above, in its motion for summary judgment, plaintiff asserted that the report or reports recounting Pippert's arrest were not subject to ORS 419B.035 and, consequently, had to be disclosed. That, like the city's motion, put the burden on the city to show that the disputed report or reports were, in fact, subject to ORS 419B.035 or otherwise exempt from disclosure. ORS 192.431(1) ("[T]he burden is on the public body to sustain its action."); ORCP 47 C ("The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."); Two Two , 355 Or. at 324-25, 325 P.3d 707. The city chose to rely exclusively on its legal argument that all records related to a report of child abuse-and, thus, any record of an arrest on allegations of child abuse-are exempt from disclosure under ORS 419B.035. We have now rejected that argument. And, because the city failed to show any facts about the reports or advance any other argument as to why the reports might be exempt from disclosure, the city also failed to meet its burden on plaintiff's motion for summary judgment; as a consequence, the trial court erred in denying plaintiff's motion for summary judgment. On remand, the trial court should grant plaintiff's motion for summary judgment and enter a judgment declaring that (1) plaintiff *771 has the right to inspect the report or reports containing the requested information and (2) before plaintiff inspects the report or reports, the city may redact any information that plaintiff has conceded is outside the scope of its request.
Reversed and remanded.

The provisions of the Public Records Law were amended and renumbered in 2017, after the events relevant to this case. See Or. Laws 2017, ch. 456; Or. Laws 2017, ch. 654; Or. Laws 2017, ch. 728. The changes have no effect on our analysis. Consequently, for convenience, we cite the current versions of the statutes.

On appeal, neither party challenges the trial court's failure to enter a judgment declaring the rights of the parties. See ORS 28.020 (a plaintiff in declaratory judgment action may "obtain a declaration of rights, status, or other legal relations"); Beldt v. Leise , 185 Or. App. 572, 576, 60 P.3d 1119 (2003) ("If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights[.]"). On remand, the trial court will have an opportunity to issue a judgment declaring the parties' rights.

The text of ORS 419B.035(1) is set out below. 293 Or. App. at 761-62, 429 P.3d at 1023-24.

As noted above, Francke requested release of the arrest record "redacted as necessary to protect juvenile victims." Plaintiff appears to contend, and we agree, that that amounts to a request for the city to omit the identity of and biographical information concerning the victim and the complaining witness. Thus, we understand Francke's second records request to request a report containing the information listed in ORS 192.345(3) other than identification of and biographical information about the victim and the complaining party, if that information would have suggested the identity of the victim.

ORS 419B.035(1) allows disclosure of those records by the Department of Human Services (DHS) for 11 enumerated purposes. Other subsections of ORS 419B.035 include a catchall for release of records by DHS as necessary to achieve the agency's purposes, ORS 419B.035(3), and two provisions allowing disclosure by a law enforcement agency, ORS 419B.035(4), (5). None of those provisions is at issue here.

That is, if every document containing any information about child abuse were a "report of child abuse" within the meaning of ORS 419B.015(1), then perhaps all such documents would be excluded from disclosure as "reports and records compiled under the provisions of ORS 419B.010 to 419B.050." However, because, as explained in the text, that construction of "report of child abuse" is incorrect, ORS 419B.015(1), we do not consider that additional proposition.

ORS 146.780 has been amended several times since 1969. Or. Laws 1971, ch. 401, § 10; Or. Laws 1971, ch. 451, § 15; Or. Laws 1973, ch. 408, § 29; Or. Laws 1973, ch. 794, § 15a.

We question whether the city can, as it seems to assert, create a single public record that cannot be disclosed by storing some writings excluded from disclosure (for example, police reports detailing an investigation of child abuse conducted under ORS 419B.020 ) with other writings that otherwise must be disclosed (for example, a report of an arrest). However, because the city failed to prove any facts about the way in which it stores police reports or the contents of the reports at issue, we need not, and do not, address that question.