DEHOOG, P. J.
*644 *357 Plaintiff is a former resident and city councilor of Damascus, a city previously incorporated in Clackamas County. Both the City of Damascus and plaintiff's position as a councilor ceased to exist following a special election held in May 2016, when a majority of the city's residents voting on the issue elected to disincorporate Damascus. As a result of House Bill (HB) 3085 (2015), which legislatively referred the matter to the voters of Damascus, that decision-whether to disincorporate-had appeared on the ballots of all city residents as Measure 93.[1] Before the election, plaintiff sought declaratory and injunctive relief, contending that HB 3085 violated various constitutional and statutory provisions and conflicted with the city charter. The trial court denied plaintiff's request to enjoin the election. The city's residents subsequently voted to disincorporate, and, in accordance with procedures dictated by HB 3085 and House Bill (HB) 3086 (2015),[2] the City of Damascus proceeded to disincorporate. That is, among other things, the city paid off all of its debts, transferred its assets to Clackamas County, "surrender[ed] its charter," and "cease[d] to exist." In the course of winding down, the city also terminated or transferred all of its employees and closed its municipal offices. Following the election, plaintiff sought a declaration that Measure 93 violated the city charter, the Oregon Constitution, and various statutes governing municipal disincorporation and that, as a result, the purported disincorporation of Damascus was a nullity. Instead, the trial court granted summary judgment to defendants, thereby declaring Measure 93 valid. Plaintiff appeals.
In three assignments of error, plaintiff challenges the trial court's summary judgment ruling and reprises his arguments that Measure 93 violates various provisions of *358 organic and statutory law. Specifically, plaintiff contends that Measure 93 violates (1) Article IV, section 1, and Article XI, section 2, of the Oregon Constitution ; (2) the City of Damascus Charter; and (3) ORS 221.610 and ORS 221.621. Adhering to our practice of resolving cases when possible on statutory grounds before considering constitutional arguments-and recognizing that plaintiff's charter-based argument is, itself, largely based on constitutional grounds-we begin by addressing plaintiff's statutory argument. See State v. Barrett , 350 Or. 390, 397-98, 255 P.3d 472 (2011) (noting court's reluctance to reach constitutional issues before determining what ordinary laws authorize, require, or prohibit). For the reasons that follow, we agree with plaintiff's statutory argument and do not reach the remainder of his contentions. Consequently, we reverse the trial court's summary judgment ruling and remand for further proceedings.
The underlying facts are procedural and undisputed. The City of Damascus was incorporated in 2004. On June 22, 2015, following an earlier but ultimately unsuccessful attempt by the city's voters to disincorporate, the Legislative Assembly passed HB 3085, a referendum directed to the voters of Damascus. The Secretary of State placed HB 3085-designated as Measure 93-on the ballots of all registered voters in Damascus, to be voted on in a special election scheduled for May 17, 2016. One month before the election, plaintiff-a resident of Damascus who at the time was also a member of the city council-filed this action contending that Measure 93 was unlawful and seeking declaratory and injunctive relief. Two weeks later, but still before the special election, plaintiff moved for a temporary restraining order enjoining a vote on Measure 93, but the trial court denied relief. Following the election, Measure 93 was deemed to have passed in *645 accordance with its own terms, meaning that a majority of those who had voted on the measure voted to disincorporate. This litigation resumed after Measure 93 passed, with both sides filing motions for summary judgment. After hearing the parties' arguments, the court granted defendants' motion for summary judgment, denied plaintiff's cross-motion, and entered a judgment declaring the validity of HB 3085, Measure 93, and the results of the May election. *359 Now compiled at Oregon Laws 2015, chapter 603, the text of Measure 93 as approved by the voters of Damascus states:
"Be It Enacted by the People of the State of Oregon:
" Section 1. (1) Notwithstanding ORS 221.650, during the period that begins on the 30th day following the date of the election held pursuant to section 2 of this 2015 Act and ends on the 60th day following the date of the election, the City of Damascus shall:
"(a) Expend moneys in the funds of the city to satisfy all debts, obligations, liabilities and expenses of the city, and transfer moneys to Clackamas County, in the manner required under section 1 (2), chapter 637, Oregon Laws 2015 (Enrolled House Bill 3086); and
"(b) Convey, grant, assign and deliver all of the city's real property and tangible and intangible personal property, other than moneys expended or transferred under paragraph (a) of this subsection, by proper conveyance, to Clackamas County for the benefit and use of the county.
"(2) Notwithstanding ORS 221.610 and 221.621, on the 61st day following the date of the election held pursuant to section 2 of this 2015 Act:
"(a) The City of Damascus shall surrender its charter, disincorporate and cease to exist.
"(b)(A) The city shall cease to exist in its corporate capacity without any further or other formal action;
"(B) The city's property rights and interests shall vest in Clackamas County; and
"(C) The auditor, clerk or other keeper of records in the city shall deposit the records of the city in the office of the county clerk.
"Section 2. This 2015 Act shall be submitted to the people of the City of Damascus for their approval or rejection, by a majority of the voters voting on this 2015 Act, at a special election held on the same date as the next primary election."
As noted, the vote on Measure 93 was not the first effort by the residents of Damascus to disincorporate. It appears undisputed that the legislature passed HB 3085 in *360 response to an earlier, unsuccessful effort to disincorporate that took place in November 2013, when the Damascus City Council referred to the city's voters a citizen-initiated disincorporation measure. After that measure failed to receive enough votes to pass, the city declared that the measure had failed. A Damascus resident filed suit challenging that result, arguing that, because a majority of the residents who had voted on the measure voted in favor of disincorporation, the measure had passed. The trial court hearing that challenge disagreed. The court noted that, under ORS 221.610, disincorporation requires the vote of a "majority of the electors of the city." The court reasoned that ORS 254.005(4) governs who are "electors" for purposes of ORS 221.610, and, in that court's view, ORS 254.005 defines "electors" as those qualified to vote in an election, rather than those who, in fact, voted.[3] Accordingly, that court determined that the measure required at least 3,441 votes (a majority of the city's residents registered to vote at that time) to pass, and the 2,947 votes cast in favor of disincorporation were therefore too few.
Returning to the present challenge, we begin by addressing a preliminary matter: Defendants argue that, because the challenged election has long since been held and the City of Damascus is now disincorporated, *646 plaintiff's appeal has become moot.[4] As a prudential matter, we typically will not consider cases that are moot. State v. K. J. B. , 362 Or. 777, 785, 416 P.3d 291 (2018) (clarifying that mootness is a prudential consideration rather than a constitutional limit on court's authority to decide cases (citing Couey v. Atkins , 357 Or. 460, 515-20, 355 P.3d 866 (2015) )). Examining mootness is " 'one part of the broader question of whether a justiciable controversy exists.' " *361 Couey , 357 Or. at 470, 355 P.3d 866 (quoting Brumnett v. PSRB , 315 Or. 402, 405, 848 P.2d 1194 (1993) ). Generally speaking, a justiciable controversy exists under Oregon law when " 'the interests of the parties to the action are adverse' and 'the court's decision in the matter will have some practical effect on the rights of the parties to the controversy.' " Barcik v. Kubiaczyk , 321 Or. 174, 182, 895 P.2d 765 (1995) (quoting Brumnett , 315 Or. at 405-06, 848 P.2d 1194 ). Thus, an otherwise justiciable case "becomes moot when a court's decision will no longer have a practical effect on the rights of the parties." K. J. B. , 362 Or. at 785, 416 P.3d 291 (internal quotation marks omitted).
The party moving for dismissal-here, defendants-bears the burden of establishing that a case is moot. Id . Specifically, as the court explained in K. J. B. ,
"[t]he burden rests with the party moving for dismissal to establish that a case is moot. * * *
"The moving party's burden includes the burden of establishing that any collateral consequences either do not exist or are legally insufficient. That does not mean that the moving party is required to imagine all possible collateral consequences and then disprove each of them. Rather, when the moving party takes the position that a case has become moot, the responding party must identify any collateral consequences that he or she contends [have] the effect of producing the required practical effects of a judicial decision. At that point, the moving party must demonstrate that any of those identified collateral consequences either does not exist or is legally insufficient."
362 Or. at 785-86, 416 P.3d 291 (citation omitted).
In support of their contention that plaintiff's appeal is moot, defendants argue that a declaration that Measure 93 is unlawful "would have no practical effect on the parties because the City no longer exists and there is no apparent mechanism to unwind the disincorporation." In defendants' view, plaintiff is "essentially seeking a judicial order requiring that the area of Damascus be incorporated," which, defendants argue, is not a "statutorily recognized avenue to incorporation" under ORS chapter 221, the only chapter addressing municipal incorporation. Defendants further observe that, as part of the disincorporation process, the city *362 terminated or transferred all of its employees and transferred all of its assets. Thus, defendants appear to suggest that, even if there is authority to order Damascus to reincorporate, there is no practical means for the city to resume operations. Plaintiff responds that his appeal is "neither factually nor legally moot." Contending that the act of "surrendering" a charter is, essentially, a "legal fiction," plaintiff argues that we could reverse that act "by the stroke of this court's pen." That is, if we were to invalidate the results of the special election, Damascus and its residents would be restored to the status quo ante: The city would reacquire its corporate existence (and related obligations to its tax-payers), plaintiff would regain his position as a city councilor, and the residents of Damascus could "resume their home rule constitutional right to self-governance." Plaintiff further contends that he "and any of the other city councilors could meet and resume the operations of the city."
We recognize that at least some kinds of election cases are quintessentially prone to mootness. See K. J. B. , 362 Or. at 785, 416 P.3d 291 (discussing, as an example, a challenge to an order certifying an initiative *647 measure to the ballot for the next election; noting that, once the election has taken place, a judicial decision regarding the lawfulness of the certification order can have no practical effect).[5] We further acknowledge that, notwithstanding plaintiff's apparent willingness to resume a leadership role for the city, we are somewhat skeptical that a "city" that-for the time being, at least-has no facilities, no personnel, and no resources to acquire them can somehow "reincorporate" itself and resume functioning as a municipality. Nonetheless, we observe that, even though defendants had the opportunity to address plaintiff's arguments in their response brief, they have made little or no *363 effort to demonstrate that the practical consequences that plaintiff identifies do not exist or are legally insufficient. See K. J. B. , 362 Or. at 786, 416 P.3d 291. To be sure, defendants do argue that, "[e]ven if the city could be reincorporated, there have presumably been land use, law enforcement, and numerous other types of decisions made by Clackamas County since July 2016 that would be called into question." While perhaps true, the concerns that defendants raise are that the passage of Measure 93 has already had practical consequences that may present substantial logistical challenges to undo. However, the fact that the challenged election has already had practical consequences does not render plaintiff's appeal moot; the question is whether a future decision by us will itself have practical consequences. Given defendants' burden of proof and their failure to dispute the potential consequences identified by plaintiff, we are not persuaded that defendants have established that this case is moot.[6]
Proceeding to the merits, we first consider the statutory argument underlying plaintiff's third assignment of error.[7] Plaintiff argues that the decision by resident voters whether to disincorporate the City of Damascus was governed by ORS 221.610 and ORS 221.621, and that, for various reasons, the special election that led to the passage of Measure 93 failed to comply with those statutes. Thus, plaintiff argues, the trial court erred by granting summary judgment for defendants and upholding the result of that election. Because plaintiff assigns error to the court's rulings on cross-motions for summary judgment and there are *364 no disputed issues of material fact, we review for whether either party was entitled to prevail as a matter of law. Pamplin Media Group v. City of Salem , 293 Or. App. 755, 758, 429 P.3d 1019 (2018), rev. den. , 364 Or. 294, 434 P.3d 963 (2019).
At issue is whether the special election was required to comply with ORS 221.610 and ORS 221.621, and, if so, whether it did comply with those statutes. ORS 221.610, which authorizes a city to surrender its charter and disincorporate, provides:
"Any city not liable for any debt or other obligation, may surrender its charter, disincorporate *648 and cease to exist if a majority of the electors of the city authorize the surrender and disincorporation as provided in ORS 221.621 and 221.650 . The surrender and disincorporation shall become effective 60 days after the city has authorized surrender and disincorporation."
(Emphasis added.) In turn, ORS 221.621 establishes the procedure for making the decision that ORS 221.610 authorizes, and, in relevant part, it provides:
"(1) This section establishes the procedure for determining whether a city shall disincorporate . The question shall be decided by election. The governing body of the city shall call an election when a petition is filed as provided in this section.
"* * * * *
"(4) The question of disincorporation shall be submitted to the electors of the city at an election held on the first Tuesday after the first Monday in November in any year, but shall not be submitted more than once in two consecutive calendar years."
(Emphases added.)
According to plaintiff, the Measure 93 election violated ORS 221.610 and ORS 221.621 in several ways. Plaintiff acknowledges that, by its terms, HB 3085-the text of which was voted into passage as Measure 93-purports to exempt the voters of Damascus from the requirements of those statutes. See Or. Laws 2015, ch. 603, § 1(2) (contemplating an election in accordance with section 2 of the act, "[n]otwithstanding ORS 221.610 and 221.621").
*365 He contends, however, that the voters of Damascus cannot have exempted themselves from complying with ORS 221.610 and ORS 221.621 in an election that-at least until after the election and the resulting passage of Measure 93-was subject to those provisions.[8] And, because those statutes apply, he argues, the election was invalid for several reasons. First, ORS 221.621(1) authorizes (and, in fact, requires) the governing body of a city to call an election to consider disincorporation when a petition is filed . Here, no petition was filed and it was the state legislature, rather than the city council, that caused the matter to be placed on the ballot. Second, ORS 221.610 requires a majority vote of the electors of a city for a disincorporation measure to pass, whereas Measure 93 required only a majority vote of those electors who actually voted in the special election. Third, ORS 221.621(4) requires that a disincorporation vote be submitted to the electors at a general election -"on the first Tuesday after the first Monday in November in any year." Measure 93, on the other hand, in accordance with its own terms, was submitted to the electors in a special election held in May.
For their part, defendants do not dispute plaintiff's contention that the Measure 93 election failed to comply with ORS 221.610 and ORS 221.621 ; they argue, however, that, for two reasons, compliance with those statutes was not required. Their first argument is that the statutes govern citizen initiative petitions, whereas Measure 93 appeared on the ballot as a legislative referendum. In defendants' view, municipal disincorporation may occur through either of two avenues: through a citizen initiative petition, as contemplated by ORS 221.610 and ORS 221.621, or through a legislative referral, as occurred here. Defendants observe that, by its terms, ORS 221.621 provides the procedure applicable to the first path-via initiative petition-and for *366 support notes the references to "a petition" in subsections (1), (2), and (3) of that statute.[9] And, defendants argue, because *649 ORS 221.610 applies to "disincorporation as provided in ORS 221.621," it too applies only to disincorporation votes resulting from initiative petitions. Defendants argue, therefore, that Measure 93 was not subject to the requirements of either statute.
Second, defendants argue that, even if ORS 221.610 and ORS 221.621 would otherwise have applied to the legislative referral at issue here, the legislature effectively exempted this election from their requirements by (1) contemplating, in HB 3085, an election in accordance with its terms "[n]otwithstanding ORS 221.610 and 221.621"; and (2) simultaneously passing HB 3086.[10] HB 3086 set forth the specific steps that the City of Damascus would be required to take in the course of winding down following the anticipated passage of HB 3085.[11] Unlike HB 3085, HB 3086 was not referred to the electors of Damascus but, instead, passed through both chambers of the legislature before being signed into law by the Governor. Upon signing HB 3086, the state suggests, the Governor exempted the Damascus disincorporation election from the requirements of ORS 221.610 and ORS 221.621.
*367 Neither argument can withstand scrutiny. First, we disagree that, because ORS 221.610 and ORS 221.621 govern disincorporation petitions , those statutes have no bearing here, where disincorporation followed a legislative referral. The premise of defendants' argument is that, although a city elector can pursue disincorporation by petitioning in accordance with ORS 221.621, that statute does not preclude the legislature from establishing, through a referral, an alternative path to disincorporation not subject to the requirements of ORS 221.610 and ORS 221.621. Stated differently, defendants contend that, by providing, through ORS 221.610 and ORS 221.621, one way for a city to disincorporate, the legislature did not limit the means by which a city could disincorporate to that one way. Because HB 3085 purports to exempt the Measure 93 election from the provisions of those statutes, we explore defendants' premise below. Ultimately, however, we need not conclusively decide the validity of that premise, i.e. , whether the legislature could , notwithstanding ORS 221.610 and ORS 221.621, allow for disincorporation by different means. Whether or not the legislature has the power to create a new process simply by making a referral, we conclude that it did not do so here.
Defendants' argument that ORS 221.610 and ORS 221.621 do not provide an exclusive path to disincorporation presents a question of statutory interpretation, which we review for legal error. Pamplin Media Group , 293 Or. App. at 763, 429 P.3d 1019. When construing a statute, our paramount goal is to determine what the legislature intended in enacting the statute in question. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Applying the analytical framework set out in Gaines , we begin by considering the statutory text in context, as the words chosen provide the best indication of the legislature's intended meaning. To the extent that it may help our analysis, we also will consider available legislative history. Id. at 172, 206 P.3d 1042. Finally, if, following that analysis, the statute's intended meaning remains unclear, we may resort to general maxims of statutory construction as a further aid in determining legislative intent. Id.
The most obvious context for ORS 221.610 and ORS 221.621 includes their respective *650 texts, as well as ORS *368 chapter 221 as a whole. See State v. Meek , 266 Or. App. 550, 556, 338 P.3d 767 (2014) (the text of a statute must be considered in the totality of the statutory framework); Morsman v. City of Madras , 203 Or. App. 546, 561, 126 P.3d 6, rev. den. , 340 Or. 483, 135 P.3d 318 (2006) (the chapter in which a provision is codified is relevant context). Chapter 221 addresses such subjects as city government, municipal courts, city ordinances, and the incorporation and disincorporation of cities. Notably, ORS 221.610, ORS 221.621, and ORS 221.650[12] are the only statutes that address disincorporation at all; nowhere else in ORS chapter 221 or any other statute has the legislature sought to address the disincorporation of a city.
Given that context, it is difficult to conceive that the legislature intended ORS 221.610 and ORS 221.621 to allow for any number of potential paths to disincorporation. After all, ORS 221.610 allows for disincorporation "as provided in ORS 221.621," and ORS 221.621(1) plainly states that "[t]his section establishes the procedure for determining whether a city shall disincorporate." (Emphasis added.) The legislature's decision to place "the" before "procedure" suggests that the legislature intended a single, specific procedure to be available for purposes of disincorporation: the single procedure specified in ORS 221.621 as "the procedure for determining whether a city shall disincorporate." In conjunction with the relevant context of the statute-which ultimately appears limited to ORS 221.610 's provision that a city's electors may authorize disincorporation "as provided in ORS 221.621"-the plain text of ORS 221.621 appears to signal the legislature's intention that the procedure set forth in that statute be the only procedure by which a city can disincorporate. See Wyers v. American Medical Response Northwest, Inc. , 360 Or. 211, 224-25, 377 P.3d 570 (2016) (although the use of the definite article "the," as opposed to an indefinite article, "a" or "an," is not always "definitive," the use of "the" can signify a narrowing intent); State v. Rodriguez , 217 Or. App. 24, 30-31, 175 P.3d 471 (2007) (the use of the definite article is often understood to signify an intention to refer *369 to a specific object, and the use of an indefinite article, as opposed to the definite article, has legal significance).[13]
As noted, however, we need not conclusively determine whether the legislature that enacted ORS 221.610 and ORS 221.621 intended to leave open other paths to disincorporation-such as pursuant to legislative referral-because the legislature did not pursue a different path with HB 3085. That is, although the text of HB 3085 purports to provide a means by which the voters of Damascus could themselves establish an alternative procedure, the legislature did not create that alternative through the referral act itself. The only provision, legislative or otherwise, for a special election at which a simple majority would prevail is that found in the substantive text of HB 3085, text that defendants acknowledge cannot have been given effect until after the election it purported to authorize.[14] To our knowledge, the *651 legislature did not, at the time it passed HB 3085, also issue an order dictating the manner in which its provisions would be submitted to a vote. Cf . Or. Const, Art IV, § 1 (3)(c) (authorizing legislature to order a referendum "by law" not subject to veto by the Governor); HJR 16 (1967) (referring proposed constitutional amendment; ordering the proposed amendment to "be submitted to the people for their approval or rejection at a special election held on the same day as the next regular primary election held throughout the state"). Thus, even assuming that the legislature could have authorized a different procedure in the course of ordering a referendum *370 on HB 3085, it does not appear to have done so here. As a result, ORS 221.610 and ORS 221.621 provided the only path to disincorporation and, unless for some other reason the election in this case was exempt from their terms, plaintiff is entitled to prevail.
That takes us to defendants' final argument, which is that the Measure 93 election was exempt from the requirements of ORS 221.610 and ORS 221.621 by virtue of HB 3086, which had both been passed by the legislature and signed by the Governor. As noted, defendants contend that the combination of the "[n]otwithstanding ORS 221.610 and 221.621" clause in HB 3085 and the simultaneous passage of HB 3086 somehow effectively exempted the special election from those statutes. According to defendants, "[b]ecause the [G]overnor signed HB 3086, she approved exempting the disincorporation vote from the requirements in ORS 221.610 and [ORS] 221.621." We disagree. HB 3086 does not reference ORS 221.610 or ORS 221.621, nor does that bill purport to regulate the election contemplated by HB 3085 in any way. Indeed, by the express terms of HB 3086, that bill's operative provisions did not even go into effect until after the voters approved HB 3085.[15] Defendants have wisely chosen not to argue that the Damascus voters could somehow have exempted the Measure 93 election from the requirements of ORS 221.610 and ORS 221.621 in the course of the election itself. We see no greater merit, however, to their argument that HB 3086 had that effect, especially when its substantive provisions did not become operative until after the election had passed.
In summary, we conclude that, at the time of the Measure 93 election, ORS 221.610 and ORS 221.621 provided the only means by which a city could disincorporate and that the legislature did not effectively exempt the election from complying with their terms. Moreover, defendants do not dispute that, if the Measure 93 election was required to comply with those terms, it failed to do so; that is, there is no factual-or legal-dispute that the special election did not comply with ORS 221.610 and ORS 221.621. Thus, the *371 trial court erred in awarding summary judgment to defendants and in denying summary judgment to plaintiff, who, for the reasons stated above, is entitled to prevail as a matter of law.
Reversed and remanded.

The text of HB 3085/Measure 93 is set forth below, 297 Or. App. at 359.

HB 3086 was signed by the Governor and enacted into law as Oregon Laws 2015, chapter 637. Section 1 of HB 3086, which sets forth detailed procedures that the city must follow in winding down, became effective no earlier than the passage of HB 3085 by the Damascus voters. Or. Laws 2015, ch. 637, § 2. The remaining sections of HB 3086, which became effective immediately upon passage, further condition the operative date of section 1 on the outcome of the HB 3085 election and other events.

In other contexts, elections that require, in order to pass, that a proposal receive the vote of the majority of those eligible to vote, rather than simply a majority of those actually voting, have been referred to as requiring an "absolute majority." See, e.g. , Chamberlain v. Myers (S055744) , 344 Or. 605, 609, 189 P.3d 6 (2008).

Before this case was submitted, defendants filed a notice of probable mootness, which plaintiff opposed. The appellate commissioner entered an order preliminarily declaring the case not moot but noted that the decision was not binding on the merits panel. Defendants reprised their mootness arguments in the response brief, and plaintiff responded in his reply.

Defendants do not argue that the trial court somehow lost its authority to declare Measure 93 invalid once the election had taken place, nor that it had lacked the authority to declare the result of that election void. Accordingly, plaintiff's appeal does not appear to present issues that we have determined in other cases were moot. See, e.g. , Sizemore v. Keisling , 164 Or. App. 80, 83, 990 P.2d 351 (1999), rev. den. , 330 Or. 138, 6 P.3d 1098 (2000) (distinguishing the plaintiff's claims seeking to enjoin submission of ballot measure for vote and reverse Secretary of State's decision to submit, both of which were rendered moot by election, from claim seeking declaration that the measure was enacted in violation of the constitution and was therefore void, which remained a live controversy and therefore was not moot).

Given our conclusion that defendants have not sustained their burden of establishing that plaintiff's appeal is moot, it is not necessary to consider the parties' arguments as to whether this dispute remains justiciable under the provisions of ORS 14.175 (granting courts discretion to decide certain matters that have become moot where, among other circumstances, an act of a public body is at issue and the act is "capable of repetition" but "likely to evade judicial review in the future").

As noted, we typically seek to resolve statutory issues first, tackling constitutional arguments only if that remains necessary following our statutory analysis. See Barrett , 350 Or. at 397-98, 255 P.3d 472. Like his other assignments, however, plaintiff's third assignment of error intertwines constitutional and subconstitutional analyses. As a result, plaintiff's third assignment is not strictly limited to statutory arguments. Nonetheless, as explained below, we understand his argument to be that the decision to disincorporate must be held invalid because it failed to comply with the applicable statutes, regardless of whether it therefore also violated the state constitution. We proceed with that understanding.

To be clear, plaintiff does not concede that the residents of Damascus could have exempted themselves from the provisions of ORS 221.610 and ORS 221.621 even if they had done so some time before the special election. However, because we ultimately decide this case on the ground that the city voters did not at any time exempt themselves from those provisions, it is not necessary to consider whether they could have done so at some earlier time. Relatedly, we address below defendants' argument that the legislature exempted the residents of Damascus from those provisions through a separate legislative act.

ORS 221.621(2) and (3) provide:
"(2) The requirements for preparing, circulating and filing a petition and calling an election under this section shall be as provided for an initiative measure under ORS 250.265 to 250.346, except that notwithstanding ORS 250.325, the governing body of the city shall not consider adoption or rejection of the measure before submitting it to the electors.
"(3) Notwithstanding subsection (2) of this section, if ORS 250.255 makes ORS 250.265 to 250.346 inapplicable to a city, the requirements for preparing, circulating and filing a petition under this section shall be as provided for an initiative petition under the city charter or an ordinance adopted under the city charter."

Defendants do not argue that the "notwithstanding" language in HB 3085 alone-that is, without the simultaneous passage of HB 3086-was sufficient to exempt the disincorporation election from the requirements of ORS 221.610 and ORS 221.621, nor do they contend that section 2 of HB 3085 could have had that effect by placing the measure on the May ballot for a simple majority vote.

See Or. Laws 2015, ch. 637, § 1 (requiring, among other things, that the city post public notices of its requirement to satisfy its current and pending debts and obligations, that the city pay those amounts, and that the city transfer the balances of its accounts to various Clackamas County accounts and certain property-tax payers).

ORS 221.650 provides that, within 30 days after authorization of the surrender of a city charter, the city shall convey all of its property and property rights to the county in which the city is located. ORS 221.650 is not at issue in this appeal.

We emphasize that, in contemplating whether the legislature intended for compliance with ORS 221.610 and ORS 221.621 to be the sole means by which a city could disincorporate, we are not suggesting that the legislature that enacted those statutes sought to somehow bind future legislatures. See, e.g. , Moro v. State of Oregon , 357 Or. 167, 195, 351 P.3d 1 (2015) ("When the legislature pursues a particular policy by passing legislation, it does not usually intend to prevent future legislatures from changing course."). Nothing, so far as we can tell, would have prohibited the legislature that referred HB 3085 from passing, through ordinary channels, a statute authorizing a city to disincorporate by other means, whether pursuant to a legislative referendum or otherwise.

That concession would appear to be well taken. As the Supreme Court has stated in regard to measures referred to people after having been enacted through the legislative process, "the measure * * * is not a law. It will never become a law unless a majority of voters voting upon the referred bill vote in favor of the bill." Davis v. Van Winkle , 130 Or. 304, 307, 278 P. 91, reh'g den. , 130 Or. 304, 280 P. 495 (1929). We see no reason that the provisions of HB 3085 would have any greater effect when it never completed the legislative process in the first place.

See Or. Laws 2015, ch. 637, § 2 (stating that section 1 does not become operative until Measure 93 is approved by a majority of the voters).