Argued and submitted May 10, reversed and remanded with instructions
November 13, 1996, petition for review allowed May 20, 1997 (325 Or 367)

Bruce THOMPSON,
*Appellant,*

*v.*

Jean COUGHLIN,
*Respondent.*

(8911-06395; CA A87937)

927 P2d 146

Robert S. Sola argued the cause for appellant. On the briefs were Michael L. Williams and Williams & Troutwine, P.C.

Stephen S. Walters, argued the cause for respondent. With him on the brief was Keith M. Garza.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff and defendant were agents for Mutual of New York (MONY). They formed a partnership to sell life insurance, primarily with MONY but also with other companies. Plaintiff seeks an accounting of the partnership's business and a division of commissions earned in the course of the partnership. On remand from our previous decision, *Thompson v. Coughlin*, 124 Or App 398, 862 P2d 582 (1993), *rev den* 318 Or 351 (1994), the trial court refused to render an accounting on the ground that plaintiff had unclean hands and was not entitled to equitable relief. Plaintiff appeals. We review *de novo* and reverse and remand.

The crux of the dispute is whether defendant is required to share commissions that she received for the sale of large amounts of life insurance to members of the Macdonald family in 1988 and 1989. Allegedly at the Macdonalds' request, defendant excluded plaintiff from participation in the sale of part of that insurance. The sale of the rest occurred after defendant withdrew from the partnership but within two years of her withdrawal.

The original partnership agreement, which the parties executed in April 1984, provided that they would share all commissions equally and that, if one partner withdrew, they would continue to share commissions for insurance sold to a partnership client or account within two years after the withdrawal. In February 1986, the parties agreed to two additional documents that provided that either party could terminate the partnership on 30 days' notice and that the equal division of commissions would apply only on a case-by-case basis. Defendant terminated the partnership in November 1988.

The trial court originally held that the two 1986 documents superseded the original 1984 partnership agreement and that, as a result, there was no obligation to share commissions that arose after the termination of the partnership. It also held that the Macdonald sales were not "joint cases" under the 1986 documents. On appeal, we reversed those holdings. We held that the 1986 letters supplemented rather than superseded the original 1984 agreement, that plaintiff

was therefore entitled to share commissions for two years after withdrawal, and that the trial court erred by not rendering an accounting. *Thompson*, 124 Or App at 402. Because the issue might arise on remand, we also held that the 1986 letters were intended to preserve the parties' right to share in commissions arising from sales by either party to existing clients and that the Macdonalds were an existing client. 124 Or App at 402-04. We then "reversed and remanded [the judgment] for further proceedings not inconsistent with this opinion[.]" 124 Or App at 404.

On remand, the trial court did not render an accounting or divide the commissions. Rather, it found that plaintiff had unclean hands, because he failed to share several small commissions with defendant, and that those unclean hands prevented him from receiving equitable relief. It therefore entered judgment for defendant. The trial court also suggested, but did not find, that a settlement of a dispute in August 1988 might have resolved all issues concerning the partnership. On appeal, plaintiff challenges both the trial court's decision to reach these issues and its substantive rulings.

In our decision on the previous appeal, we resolved the effect of the parties' agreement on the sales to the Macdonalds. In remanding for further proceedings not inconsistent with our opinion, we contemplated that the trial court would render the accounting that plaintiff requested, determining the amount that defendant owed to plaintiff because of the sales to the Macdonalds after taking into consideration other relevant transactions and obligations between the parties. In reaching our decision, we necessarily rejected defendant's argument, which she made in a footnote in her brief, that the court should dismiss plaintiff's claims because of his alleged unclean hands.[1]

■ Plaintiff argues that the trial court could not consider defendant's unclean-hands argument because we had

---

[1] Because it held in defendant's favor on a different ground, the trial court had not ruled, or needed to rule, on the unclean hands-issue at the time of the previous appeal. It was not necessary, therefore, for defendant to cross-assign error in order to raise the argument in support of affirming the trial court's judgment. ORAP 5.57.

previously rejected it. That argument is only partly correct. Our rejection of the argument was necessarily based on the evidence in the record at the time of our decision. Because of the nature of the unclean-hands doctrine, that rejection did not prevent the trial court from reconsidering the issue based on additional evidence that might arise on remand.

■■  The doctrine of unclean hands is not an affirmative defense. Rather, its purpose is to deny equitable relief to a party that, by its actions, has disqualified itself from the assistance of a court of conscience. *See North Pacific Lumber Co. v. Oliver*, 286 Or 639, 650, 596 P2d 931 (1979); *Gratreak v. North Pacific Lumber Co.*, 45 Or App 571, 575-76, 609 P2d 375, *rev den* 289 Or 373 (1980). Thus, a decision at one point that the doctrine does not apply does not foreclose a contrary decision at a later point. Misconduct that is relatively minor in the overall context, however, does not necessarily call for application of the doctrine. "In quantitative terms, the misconduct must be serious enough to justify a court's denying relief on an otherwise valid claim. Even equity does not require saintliness." *Oliver*, 286 Or at 651.

■  Defendant bases her unclean-hands argument on plaintiff's admitted failure to include her on several applications for insurance on partnership clients, thereby potentially depriving her of her share of the commissions on any policies that resulted from those applications. The first instance occurred before the dispute over the Munro transaction[2] but well after relations between the partners had begun to deteriorate. The others came after plaintiff learned that defendant did not intend to give him his proper share of the commissions on the Munro transaction. The final instance, which involved the largest commission, occurred while this case was pending in the trial court.[3] The total commissions withheld by plaintiff are around $2,000, which is significantly less than one percent of the commissions that defendant received on the transactions in issue. We do not

---

[2] *See* 144 Or App at 355, below.

[3] Defendant argues that plaintiff deliberately withheld information of this final transaction at the first trial. To the extent that she suggests that he gave untruthful testimony, we disagree; no question from either side required him to mention that policy. To the extent that she suggests that he failed to disclose the transaction, she is correct.

find that any misconduct should lead us to deny defendant equitable relief.

There was evidence at the first trial of plaintiff's failure to include defendant on several applications for insurance for partnership clients. In some cases, he asserts that he did so in retaliation for her excluding him from the Munro transaction, but at least one case occurred before that event. In the previous appeal, we necessarily decided that that evidence was not sufficient in itself to justify application of the doctrine. Defendant points to additional evidence at the trial on remand, primarily the final withheld commission and what she asserts to be a new and incredible explanation for failing to include defendant on the application that preceded the Munro transaction.

We consider the new and old evidence as a unit to determine whether the total effect is to require us to deny plaintiff relief on the ground of unclean hands. We are not impressed with many of plaintiff's actions or his explanations for them, although we do not find his additional explanation for the first case to be as incredible as defendant suggests.[4] We also find that plaintiff's actions arose out of the same transaction—the partnership relationship—as did the issues that he raised in his complaint. Nevertheless, we do not believe that those actions are sufficient for us to invoke the clean-hands doctrine.

■ ■ First, plaintiff's misconduct in failing to include defendant on the applications for these cases was relatively minor in comparison to defendant's action of excluding plaintiff from any participation in a very large policy commission that, by her own admission, involved a partnership client. *See Thompson*, 124 Or App at 403-04. Second, by the time of trial plaintiff did not dispute that the cases in which he failed to list defendant on the application should be included in the overall accounting. Thus, he will not reap the benefit of his misconduct. *See Oliver*, 286 Or at 652-53. Third, the normal effect of the clean-hands doctrine is to remit the plaintiff to his or her legal remedies, not to deny any relief whatever.

---

[4] We also note that plaintiff appears from the transcript to have been a combative and not especially sympathetic witness. That attitude does not, however, mean that he came into court with unclean hands.

*Gratreak,* 45 Or App at 577. However, one partner cannot normally bring an action at law against another partner on a partnership obligation until there has been a partnership accounting. *See Troutman v. Erlandson,* 287 Or 187, 197-200, 598 P2d 1211 (1979); *Moffatt v. Harden,* 58 Or App 505, 507-09, 648 P2d 1311, *rev den* 293 Or 653 (1982). Applying the doctrine in this case would prevent an accounting and thus might well deny plaintiff any relief for defendant's breach of the partnership agreement.

■     For these reasons, plaintiff's failure to conduct himself above reproach does not lead us to deny him the equitable relief that he seeks. The unclean-hands doctrine should not be used so that it is itself an instrument of injustice. *See Taylor et ux v. Grant et al,* 204 Or 10, 26, 279 P2d 479, 279 P2d 1037, 281 P2d 704 (1955). In this case the trial court applied the doctrine in such a way that plaintiff's misconduct in several small matters permitted defendant to hold on to a windfall that may be 100 times larger. Because plaintiff's misconduct was not egregious, the application of the doctrine would itself be inequitable.

■     We turn to defendant's affirmative defense of settlement. Unlike the clean-hands issue, that defense was not before us on the previous appeal. The trial court had not ruled on it and, although defendant mentioned some of the relevant facts in her brief, she did not seek to uphold the judgment in her favor on that ground. As a result, we did not decide the question, either implicitly or explicitly. In *Koch v. So. Pac. Transp. Co.,* 274 Or 499, 511-13, 547 P2d 589 (1976), the Supreme Court noted that, in most cases, remanding for a new trial should mean just that, a full retrial, unless the appellate court otherwise directs. It pointed out that a different rule would force the successful party to raise *all* issues on appeal, leading to judicial inefficiency. In our previous decision in this case, we did not remand for a new trial, but we expressly provided that the trial court could conduct further proceedings that were not inconsistent with our decision. Deciding the affirmative defense of settlement was not inconsistent with that decision. We therefore turn to the merits of that defense.

■ The commissions in dispute arose from the attempted placement in 1988 of $30 million of insurance on the life of Lisabeth Munro, the Macdonalds' former daughter-in-law, and the replacement of an additional $12 million of the Macdonalds' existing insurance in 1989. Plaintiff was aware of the Munro transaction as it occurred and participated in its early stages; defendant excluded him from the closing of the transaction. This exclusion led to a dispute between plaintiff and defendant that they resolved on August 1, 1988, by an agreement that plaintiff would receive 15 percent of the total commission on the sale; defendant received 35 percent, and an outside agent received 50 percent. In fact, MONY accepted, and plaintiff received a commission on, only $12 million insurance on Munro. Other companies ultimately accepted an additional $8 million. Plaintiff did not receive any part of the commission on the additional sales, nor did he receive any commission on the replacement insurance that the Macdonalds purchased in 1989. Those are the commissions that he seeks in this case.

Defendant argues that the August 1, 1988, settlement of the dispute over the Lisabeth Munro policies was a final resolution of the partnership relationship between plaintiff and defendant. The trial court suggested that that argument might be correct, although it did not directly rule on the point. On our *de novo* review, we find that the settlement involved only the commission on the Munro insurance that was placed with MONY.

The letter settling the dispute, which plaintiff's attorney wrote and defendant's attorney signed, refers to "the dispute between our clients" and provides that defendant will put plaintiff on the Munro application for 15 percent of the total commission. In the letter, plaintiff's attorney asked for copies of the paperwork implementing the agreement "when MONY is informed of it." At the time of the settlement, the only Munro insurance application was for $30 million from MONY, and the only dispute between plaintiff and defendant was over the commission for that insurance. Defendant had excluded plaintiff from *that* transaction, and

plaintiff had, therefore, hired an attorney to resolve *that* dispute. The terms of the settlement relate solely to that insurance and specifically refer to plaintiff's share of the commission from MONY.

Defendant argues, nevertheless, that other circumstances indicated that the parties intended to resolve all of their differences. Our review of the record leads us to a different view of the evidence from what defendant suggests. Defendant did not communicate with plaintiff on the subject again until November 1988, when her attorney wrote plaintiff's attorney, stating that the partnership had terminated on August 1, designating the files that she believed would remain with her, and enclosing a mutual release of claims. In response, plaintiff's attorney stated that the partnership did not terminate until the appropriate period after defendant gave notice and that defendant did not give notice until her attorney's November letter. Although he acknowledged receipt of the release, he proposed a method of resolving the obligations between the partners in which the release played no role.

Based on this correspondence and other evidence, we cannot find that *both* plaintiff and defendant intended the August 1 agreement to be anything more than the settlement of a dispute concerning the distribution of a specific commission—the one that it expressly mentioned, for the MONY policies on Munro's life that were the subject of the application that led to the dispute.[5]

There is considerable evidence in the record concerning the details of the partnership accounting. Because of the nature of its decision, the trial court did not make any findings concerning that evidence, and the parties do not discuss the details in their briefs. We therefore remand to the trial court to evaluate that evidence, and any additional evidence on that question that it permits the parties to introduce, and to render an accounting of the partnership business and a division of the commissions earned that are subject to the partnership agreement.

---

[5] Defendant's defenses of waiver and estoppel depend on a view of the August 1 agreement that is contrary to the one that we have adopted and require no further discussion.

Reversed and remanded with instructions to render an accounting and for further proceedings consistent with this opinion.