Argued and submitted November 14, 2002, University of Oregon, Eugene, reversed and remanded with instructions January 8, 2003

Homer BELDT
and Elizabeth Beldt,
husband and wife,
dba Pineview Mobile Home Estates,
*Respondents,*

*v.*

Reva LEISE,
*Appellant.*

00-CV-3600-CC; A115926

60 P3d 1119

John S. Woodworth argued the cause for appellant. On the briefs was Matthew S. Johnson.

James J. Stout argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Brewer and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiffs, the owners and operators of the mobile home park in Sutherlin where defendant lives, brought this declaratory judgment action under ORS 28.020, seeking a declaration that their method of charging for water furnished to the residents complies with the applicable statute. In its judgment, the trial court gave plaintiffs the declaration that they sought, and defendant appeals. We reverse in part and remand for entry of a declaratory judgment that is consistent with this opinion.

■■ The facts are generally undisputed. To the extent that there is any disagreement, we state them in accordance with the trial court's decision.[1] Defendant has lived in the park since 1985; she is one of five tenants who each occupy two spaces. Her rental agreement provides that she will pay a monthly charge of $13.00 for water.[2] There is no separate provision concerning payment for water used in the park's common areas. The park receives water from the city through two meters. One of the meters serves the club house and some of the residential spaces, while the other meter serves the remaining spaces. The individual spaces do not have water meters, so it is impossible to measure how much water each resident actually uses.

When plaintiffs purchased the park in 1994, they continued the previous owner's practice of totaling the monthly bills for the two meters, dividing that total by the

---

[1] As we discuss below, whether a declaratory judgment proceeding is legal or equitable in nature depends on the nature of the case and the relief sought. *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999). The parties assume that this case is equitable in nature. We do not need to decide whether they are correct for the purpose of stating the facts because, to the extent that there are any factual disputes, we agree with the trial court's implicit findings.

[2] Another person signed the rental agreement that is in evidence. Plaintiffs argue that, as a result, there is no evidence of the terms of *defendant's* rental agreement. However, defendant testified that the document was her rental agreement, and the document was admitted without objection. The document contains a note, in unidentified handwriting, that the person who signed it is defendant's daughter and that the daughter later moved out. We hold that, when all the evidence is considered, there is sufficient evidence that the document in evidence represents defendant's rental agreement.

number of occupied spaces, and charging the resulting amount to each tenant. In 1996, in response to tenant complaints about the variability of bills over the course of a year under that practice, plaintiffs changed the policy to charge each tenant a flat amount each month. Under that approach, the tenants pay less in the summer and more in the winter than the city bills the park. If the total received for the year is less than the total of the bills from the city over the year, plaintiffs may increase the amount for the next year; if it is more, they refund the difference to the tenants. In the year before the trial, the refund was $9.24 per space. Plaintiffs do not charge an administrative fee for or make any profit from the water.

Defendant objected that plaintiffs' method of billing did not reflect her actual water usage. She believed that she used considerably less water than did tenants who had substantial lawns, and she was opposed to subsidizing them, as she believed was occurring. When plaintiffs decided to increase the rent on the second lot for residents who occupied two lots from $20 a month to an amount equal to one half of the rent for the first lot, defendant began refusing to pay her water bill on the ground that plaintiffs' method of billing violates ORS 90.510(8). She continued to pay the required rent on both lots. Plaintiffs then filed this declaratory judgment action. The trial court ultimately entered a judgment declaring that plaintiffs' method of charging for water was valid under ORS 90.510(8) and that defendant was in breach of the rental agreement and the park's rules by refusing to pay her monthly water bill. It also gave plaintiffs judgment for their attorney fees.

In her first assignment of error, defendant argues that plaintiffs were not entitled to the equitable relief of a declaratory judgment because they had unclean hands. She asserts that plaintiffs engaged in bad faith behavior by trying to intimidate defendant and others, that their method of charging for water is unlawful, that they were unjustly enriched by receiving repayment for water used for the park's common areas without following the required procedure, and that the relief that they request would be inequitable.

■ · The first problem with defendant's argument is that it reflects a fundamental misunderstanding of a declaratory judgment proceeding. A declaratory judgment is not in itself a request for equitable relief; it is a statutory method for a party to receive a declaration of its rights when there is a justiciable controversy, even if the party may not have a right to any further relief. ORS 28.010. A declaratory judgment proceeding may be either legal or equitable in nature, depending on the nature of the case and the relief sought. *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999). What the parties' rights are may depend on whether legal or equitable principles apply, but nothing in the distinction between law and equity prevents the court from declaring those rights. If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to what it believes its rights to be. *See Goose Hollow v. City of Portland*, 58 Or App 722, 726-27, 650 P2d 135 (1982) (court may not dismiss declaratory judgment action for failure to state claim if justiciable controversy exists, even if plaintiff is not entitled to the relief it seeks). The doctrine of unclean hands, thus, does not affect the court's authority to issue a declaratory judgment.[3]

■ The second problem with defendant's argument is that the facts on which she relies do not show that plaintiffs have unclean hands. The alleged threats and intimidation consist of letters in which plaintiff Homer Beldt described the expenses involved in providing individual water meters for each site, something that he asserted would be necessary if defendant's position were to prevail, and in which he indicated that a refusal to pay the water charge could be a ground for eviction. Those statements are not the kind of threat or intimidation that could be a basis for finding unclean hands. *See* ORS 90.510(8)(b) (nonpayment of utility charge is ground for termination of rental agreement for cause pursuant to ORS 90.630). The other complaints that defendant describes

---

[3] The effect of finding that a party has unclean hands is to deny it relief in equity and to remand it to its rights at law. *See Thompson v. Coughlin*, 144 Or App 348, 352, 927 P2d 146 (1996), *rev'd on other grounds*, 329 Or 630, 997 P2d 191 (2000). Thus, even if the doctrine of unclean hands were applicable, plaintiffs would still be entitled to a declaration of their legal rights.

involve the merits of the dispute. To the degree that defendant is correct about them, the declaration of the parties' rights on remand will reflect her position.

■ In her second assignment of error, defendant argues that plaintiffs' method of charging a flat fee for water rather than a fee based on defendant's actual usage does not comply with ORS 90.510(8)(a). That statute provides:

> "If a written rental agreement so provides, a landlord may require a tenant to pay to the landlord a utility or service charge that has been billed by a utility or service provider to the landlord for utility or service provided directly to the tenant's dwelling unit or to a common area available to the tenant as part of the tenancy. A utility or service charge that shall be assessed to a tenant for a common area must be described in the written rental agreement separately and distinctly from such a charge for the tenant's dwelling unit. A landlord may not increase the utility or service charge to the tenant by adding any costs of the landlord, such as a handling or administrative charge, other than those costs billed to the landlord by the provider for utilities or services as provided by this subsection."

Defendant argues that the requirement that the utility service be "provided directly to the tenant's dwelling unit" means that the landlord can charge only for the amount of a service that the tenant actually receives—the kilowatts of electricity or cubic feet of water, for example. She points out that, under plaintiffs' policy and the rental agreement, a tenant who uses 500 gallons a month will pay the same as a tenant who uses 5,000 gallons. The tenant who uses less, thus, will pay for services that were not delivered to that tenant but were delivered to someone else. Defendant views the statute as being intended to ensure fairness among tenants, and, according to her, it therefore operates to prohibit plaintiffs' billing method.

Defendant's interpretation of the statute is plausible. However, it is not the only plausible reading. It may be, rather, that the legislature's concern was to give flexibility to landlords and tenants to agree about how a landlord would bill for utility services, so long as the landlord did not attempt to profit by adding a handling or service charge to the utility's

bill. Under that understanding, the reference to "service provided directly" to the tenant would refer to the *kind* of service—electricity or water, for example—rather than to the *amount* of the service that was provided. The purpose of the statute would be to ensure fairness between the landlord and the tenants rather than among the tenants. The legislative history resolves this ambiguity in favor of the second reading.

The 1997 legislature adopted ORS 90.510(8) in essentially its current form. Or Laws 1997, ch 577, § 26.[4] The change was part of a package of amendments to the landlord-tenant statutes, some of which applied to all residential tenancies and some of which applied only to manufactured and floating homes. The amendments were the result of extensive negotiations among several groups that represented both landlords and tenants; the legislature adopted them essentially as proposed. In testimony to the legislature, two representatives of tenants emphasized that ORS 90.510(8) was intended to prohibit landlords from adding any kind of charge to utility pass-through charges. Testimony, House Committee on Commerce, SB 675, May 29, 1997, Ex L (statement of Patricia Schwoch), Ex M (statement of Frank Burleson).

John Van Landingham, who represented tenant interests in the negotiations and was the principal drafter of the amendments, prepared an extensive analysis of the amendments that he presented to the committee that adopted the bill in its final version. Supporters of the amendments and legislators treated the analysis as stating the intent of the proponents of the bill. Van Landingham explained that the amended version of ORS 90.510(8) was identical to section 16 of the proposed bill, which would become ORS 90.315(4), with an exception. He said that, with that exception, his discussion of ORS 90.315(4) applied to ORS 90.510(8).

---

[4] ORS 90.510(8) was ORS 90.510(9) in Oregon Laws 1997, chapter 577, section 26. However, a different statute in the same session, Or Laws 1997, ch 304, § 3, deleted *former* ORS 90.510(8) from the statute, leading to the current subsection numbering. The 2001 legislature made several minor changes in the wording of ORS 90.510(8) that did not affect its substance. Or Laws 2001, ch 596, § 35a. We will refer to the subsection by its current designation and with its current wording.

Van Landingham stated that the purpose of ORS 90.315(4)[5] was to permit a landlord to pass through to the tenant a charge for a service that a utility provided to the tenant but charged to the landlord. Under the statute, the "pass-through" amount is not rent. However, it would not be permissible for the landlord to charge the tenant for the utility bill unless a written rental agreement expressly provided for that charge. In addition, the landlord could not add any charge to the utility's bill. The difference between ORS 90.315(4) and ORS 90.510(8) is that the former requires the landlord to demonstrate the method of allocating the charge among the tenants, while the latter does not. In his discussion of ORS 90.315 (4), Van Landingham suggested that a rental agreement could provide for an equal allocation of a cable television bill or for allocating a natural gas bill based on the square footage of each unit, but he did not indicate that the law required those particular allocations. Testimony, House Committee on Commerce, SB 675, May 29, 1997, Ex O at 1-2, 7-8, 19 (statement of John Van Landingham).

It is clear from the legislative history that the legislature did not intend to require any particular method for allocating utility services among tenants, contrary to defendant's argument. Its concern was to ensure fairness in the relationship between the landlord and the tenants rather than to deal with relationships among the tenants. The legislature sought to achieve its purpose by requiring that, before a landlord could charge for a utility service, the tenant had to agree expressly in the written rental agreement that the landlord could charge in that manner, and it prohibited the landlord from adding any additional charge to the utility bill. In this case, the rental agreement expressly provides that defendant will pay for water service at the rate of $13 per month, and plaintiffs have taken care to avoid retaining anything greater than the actual amounts that they have paid the city. Aside from the problem that we discuss below concerning the failure to provide expressly in the rental

---

[5] The 1999 legislature amended ORS 90.315(4) by providing a method for a landlord to add a charge to bills for cable television, Internet access, or similar services. Or Laws 1999, ch 603, § 18. Our references to ORS 90.315(4) are to the 1997 version that Van Landingham discussed in his analysis.

agreement for charging for the common areas, plaintiffs' method of charging for water used by the individual units complies with the law. On remand, the trial court should enter a declaratory judgment that is consistent with the above conclusions.

■ In her third assignment of error, defendant challenges the trial court's conclusion that plaintiffs' method of charging for water used in common areas also complies with ORS 90.510(8). In that respect, defendant is correct. The rental agreement does not distinguish between charges for water used in defendant's residence and for water used in common areas. Plaintiff Homer Beldt testified that some of the water measured by one of the meters goes to the club house and to the common-area lawn, while the rest of the water from that meter goes to residential spaces. Thus an undetermined portion of the water for which plaintiffs charge defendant goes to common areas, but the rental agreement does not refer to those areas. Plaintiffs did not comply with the legal requirements for charging for the water use in the common areas.

Plaintiffs do not really dispute that point. Rather, they argue that defendant did not properly raise that issue at the trial court and that there is no evidence concerning the content of her rental agreement. The record shows that defendant adequately raised the issue so that plaintiffs could contest it and the trial court could rule on it. For the reasons that we described above, 185 Or App at 574 n 2, there is sufficient evidence of the content of her rental agreement. Because one of the two meters covers both water provided to some of the residential spaces and water provided to the common areas, and because plaintiffs add the bills for the two meters together in calculating the charge to the residents, it is impossible to determine how much of the $13 monthly charge is based on the portion for which plaintiffs did not comply with ORS 90.510(8). Until plaintiffs are able to make that calculation, or until the rental agreement complies with the statutory requirements for charging for common areas, the charge for water services is invalid.

Reversed and remanded with instructions to enter declaratory judgment that, under the applicable rental

agreement, plaintiffs' charge to defendant for water services does not comply with ORS 90.510(8) and otherwise to declare plaintiffs' rights under the statute consistently with this opinion.