Argued and submitted July 13, 2018, vacated and remanded for entry of a judgment that declares the rights of the parties May 13, 2020

CITY OF CORVALLIS,
an Oregon municipal corporation,
*Plaintiff-Appellant,*
*and*

LEAGUE OF OREGON CITIES,
*Plaintiff-Intervenor below,*
*and*

CITY OF PHILOMATH,
*Intervenor-Appellant,*
*v.*

STATE OF OREGON;
Kate Brown, Governor of Oregon;
Bev Clarno, Secretary of State; and
Jim Rue, Oregon Department of
Land Conservation and Development;
and Caldwell Farms, LLC,
*Defendants-Respondents,*
*and*

Michael GALPIN et al.,
*Defendants.*

Benton County Circuit Court
16CV17878; A164595

464 P3d 1127

In this declaratory judgment action, plaintiffs, the City of Corvallis and the City of Philomath, sought to have ORS 222.127 declared unconstitutional on its face or as applied to them. ORS 222.127 provides that, if certain conditions are met, the legislative body of a city "shall annex" certain territory within its urban growth boundary, "without submitting the proposal to the electors of the city." Plaintiffs contend that the statute impermissibly interferes with the procedures of municipal governments and thus violates the home-rule provisions of the Oregon Constitution. The trial court granted the state defendants' motion for summary judgment, granted the state defendants' motion to strike certain declarations from the summary judgment record, and denied plaintiffs' cross-motions for summary judgment. *Held*: The trial court did not err in granting summary judgment to the state defendants and denying summary judgment to plaintiffs. ORS 222.127 is not unconstitutional on its face, because, at a minimum, it can be applied to those municipalities whose charters do not conflict with it, and it is not unconstitutional as applied to plaintiffs because their charters exclude state-mandated annexations from the local voting requirement. As for striking

the declarations, any error was harmless. The trial court's rulings are therefore affirmed. The judgment is vacated and remanded, however, for the trial court to make declarations consistent with its letter opinion and the Court of Appeals decision.

Vacated and remanded for entry of a judgment that declares the rights of the parties.

Matthew J. Donohue, Judge.

James K. Brewer argued the cause for appellants. On the briefs were David E. Coulombe and Fewel, Brewer & Coulombe.

Peenesh Shah argued the cause for respondents State of Oregon, Kate Brown, Bev Clarno, and Jim Rue. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

No appearance for respondent Caldwell Farms, LLC.

Philip Thoennes filed the brief *amicus curiae* for League of Oregon Cities.

Before Ortega, Presiding Judge, and Aoyagi, Judge, and Powers, Judge.*

AOYAGI, J.

Vacated and remanded for entry of a judgment that declares the rights of the parties.

_____
* Aoyagi, J., *vice* Garrett, J. pro tempore.

## AOYAGI, J.

In this declaratory judgment action, plaintiffs the City of Corvallis (Corvallis) and the City of Philomath (Philomath) seek to have ORS 222.127 declared unconstitutional on its face or as applied to them. ORS 222.127 provides that, if certain conditions are met, the legislative body of a city "shall annex" certain territory within its urban growth boundary, "without submitting the proposal to the electors of the city." In plaintiffs' view, the statute impermissibly interferes with the procedures of municipal governments and thus violates the "home rule" provisions of the Oregon Constitution.[1]

The trial court granted the state defendants'[2] motion for summary judgment, as well as their motion to strike certain declarations from the summary judgment record, and it denied plaintiffs' cross-motions for summary judgment. For the reasons that follow, we affirm all those rulings on the merits. However, because the existing judgment contains no declarations, which is improper in a declaratory judgment action, we vacate and remand for entry of a judgment that declares the rights of the parties.

## I.  OVERVIEW OF "HOME RULE"

A basic understanding of "home rule" is necessary context for the parties' arguments, so we begin by providing a very general overview.

Under federal constitutional law, municipal corporations are "convenient agencies" of their respective states. *Hunter v. City of Pittsburgh*, 207 US 161, 178-79, 28 S Ct 40, 52 L Ed 151 (1907). As such, states enjoy every prerogative to add or withdraw authority from their municipalities, merge municipalities, or abolish a municipality altogether, "unrestrained by any provision of the Constitution of the

---

[1] Corvallis filed the action, and Philomath and the League of Oregon Cities (LOC) joined later as plaintiffs-intervenors. On appeal, LOC appears *amicus curiae* but is not a party. Because we address only Corvallis's and Philomath's claims in this opinion, we use "plaintiffs" to refer only to Corvallis and Philomath, excluding LOC.

[2] The state defendants are the State of Oregon, Governor Brown, Secretary of State Clarno, and Oregon Department of Land Conservation and Development Director Rue.

United States." *Id.* It follows that cities lack inherent authority and possess only those powers affirmatively granted by the state. That principle, known as "Dillon's Rule"— referring to an influential treatise on municipal law— dominated American legal scholarship in the nineteenth and early twentieth centuries. *See City of Corvallis v. Carlile*, 10 Or 139, 141 (1882). Thus, in Oregon, prior to 1906, the state retained all power over local affairs and had the exclusive authority to adopt and amend city charters, to establish and alter municipal boundaries, and to grant and remove legislative authority. *See id.* at 140-41 (recognizing the lack of constitutional restraint on state authority over municipal corporations and stating that municipal corporations are "subordinate branch[es]" of the state).

In 1906, riding a wave of home-rule amendments in other states, Oregon voters amended the Oregon Constitution to endow cities with home-rule authority and limit the power of the state legislature over local matters. Specifically, Article XI, section 2, was amended to preclude the state legislature from enacting, amending, or repealing "any charter or act of incorporation for any municipality, city or town" and to grant to municipal voters the "power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon." Further, Article IV, section 1, was amended to reserve initiative and referendum powers "to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district."

The passage of the home-rule amendments laid the foundation for what has now been over a century of legal disputes regarding the scope of local government authority *vis-à-vis* state authority. *See State v. Port of Astoria*, 79 Or 1, 17, 154 P 399 (1916) (by 1916, "[t]he language employed in Article XI, Section 2," had already "been the subject of much discussion").

In the resulting case law, a seminal home-rule decision of the modern era is *La Grande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *adh'd to on recons*, 284 Or 173, 586 P2d 765 (1978). In *La Grande*, the Supreme Court crafted a

two-part test to determine where state authority ends and local authority begins. In short, if a state statute addresses "the structure and procedures of local agencies," it "impinges on the powers reserved by the amendments to the citizens of local communities" and must be justified "by a need to safeguard the interests of persons or entities affected by the procedures of local government." *Id*. at 156. Conversely, if it is "a general law addressed primarily to substantive social, economic, or other regulatory objectives of the state," a state statute "prevails over contrary policies preferred by some local governments, if it is clearly intended to do so, unless the law is shown to be irreconcilable with the community's freedom to choose its own political form." *Id*.[3]

Another significant home-rule principle is the distinction between intramural and extramural authority. "When the legal voters of a city enact municipal legislation [that] operates only on themselves and for themselves, and [that] is confined within and extends no further than the corporate limits, then such voters are exercising intramural authority." *Port of Astoria*, 79 Or at 17. But when "the legal voters of a city attempt to exercise authority beyond the corporate limits of their municipality, they are using an extramural power." *Id*. While cities have "inherent, home-rule authority" to exercise intramural power, the same is not true of exercising extramural power. *Costco Wholesale Corp. v. City of Beaverton*, 343 Or 18, 25, 161 P3d 926 (2007).

Finally, with respect to annexation in particular, the power to annex territory into a municipality comes from the state and does not derive from home-rule authority. *Thurber v. McMinnville*, 63 Or 410, 414-15, 128 P 43 (1912), *abrogated on other grounds by State ex rel. Heinig v. Milwaukie et al*, 231 Or 473, 373 P2d 680 (1962). Annexation is an extramural act. *Id*. at 415-16. As such, it is well settled that the state may impose conditions on a municipality's act of annexing territory into the municipality. *See, e.g.*,

---

[3] In their second assignment of error, plaintiffs request that we "revisit and limit" or "abandon" *La Grande*'s methodology. Even if we were inclined to do so, which we are not, we have no authority to overrule Supreme Court precedent. *State v. Turner*, 235 Or App 462, 466, 234 P3d 993 (2010) ("[W]e remain bound by Supreme Court precedent until such time as that court reconsiders and disavows it."). We reject plaintiffs' second assignment of error without further discussion.

*Morsman v. City of Madras*, 203 Or App 546, 555, 126 P3d 6 (2006) (holding that the state has the authority to decide whether the residents of property subject to annexation get to vote on the annexation). What is not well settled—in that it was identified as an open question in 1990 and has yet to be answered—is whether some aspects of annexation are subject to exclusively local control:

> "Even though a city must follow a legislatively-approved procedure to annex territory, it does not follow that the legislature can decree any annexation for any reason. There is still room to argue, \*\*\* that the borders of a municipal corporation are an integral part of the corporate charter which cannot be altered by the legislature."

*Mid-County Future Alternatives v. City of Portland*, 310 Or 152, 163-64, 795 P2d 541 (1990).

## II.   FACTS

With that basic understanding of home rule in mind, we turn to the facts of this case. "On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law." *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019).

In early 2016, the legislature enacted SB 1573, now codified at ORS 222.127. *See* Or Laws 2016, ch 51, § 2. As relevant here, it provides:

> "(1)   This section applies to a city whose laws require a petition proposing annexation of territory to be submitted to the electors of the city.

> "(2)   *Notwithstanding a contrary provision of the city charter or a city ordinance, upon receipt of a petition proposing annexation of territory submitted by all owners of land in the territory, the legislative body of the city shall annex the territory without submitting the proposal to the electors of the city if*:

> "(a)   The territory is included within an urban growth boundary adopted by the city or Metro, as defined in ORS 197.015;

"(b)   The territory is, or upon annexation of the territory into the city will be, subject to the acknowledged comprehensive plan of the city;

"(c)   At least one lot or parcel within the territory is contiguous to the city limits or is separated from the city limits only by a public right of way or a body of water; and

"(d)   The proposal conforms to all other requirements of the city's ordinances."

ORS 222.127 (emphasis added).

As described in the legislative history, SB 1573 was intended to prevent local voters from unilaterally preventing the development of land that was placed within the urban growth boundaries of cities for the purpose of development. *See* Audio Recording, Senate Committee on Rules, SB 1573, Feb 24, 2016, at 39:43 (statements of John Van Landingham and Sen Lee Beyer), http://olis.oregonlegislature.gov (accessed Apr 22, 2020). The statute applies only to annexations of territory within the urban growth boundary that is subject to or will be subject to the city's acknowledged comprehensive plan. *See* ORS 222.127(2)(a) - (b). Additionally, the territory must satisfy the contiguity requirements of ORS 222.127(2)(c), and, per ORS 222.127(2)(d), the annexation proposal must conform to all other requirements in the city's ordinances.

Corvallis, Philomath, and at least 33 other Oregon cities have city charters or city ordinances that require voter approval of some or all municipal annexations. Corvallis's charter provision, which is the result of a voter referendum and resulting 1976 charter amendment, provides:

"Section 53. Vote on Annexations. Unless mandated by State law, annexation, delayed or otherwise, to the City of Corvallis may only be approved by a prior majority vote among the electorate."

Corvallis Charter of 2006, ch 10, § 53.[4] Philomath's charter provision, which is the result of a voter referendum and resulting 1995 charter amendment, similarly provides:

---

[4] The trial court construed the Corvallis Charter of 2006, so all references herein are to the 2006 charter. The charter has since been amended, in 2017, but those amendments do not affect the provision at issue.

"Section 11.1. Annexations by majority vote. Unless mandated by state law, annexations to the city of Philomath may only be approved by a prior majority vote among the electorate."

Philomath Charter of 1987, ch 11, § 11.1.

On April 18, 2016, the Department of Land Conservation and Development (DLCD) sent a letter to local governments regarding "2016 Land Use Legislation," citing DLCD's obligation under ORS 197.646 to notify local governments of certain types of new statutory requirements. The letter included notice that SB 1573 was "[o]ne of the bills that may require changes to city acknowledged comprehensive plans and/or land use regulations" and might also "affect city charters and other codes." The letter and attached report also addressed other new legislation.

About a week later, Corvallis received two separate annexation petitions—one from Caldwell Farms, LLC, and another from a group of eight landowners—seeking annexation pursuant to ORS 222.127. Corvallis directed its staff to comply with the city's charter provisions and disregard "contrary interpretations" of ORS 222.127. Subsequently, Corvallis filed this declaratory judgment action, seeking to have ORS 222.127 declared unconstitutional, either on its face or as applied, because it conflicts with the home-rule provisions of the Oregon Constitution. Philomath soon joined as a plaintiff-intervenor.

The state defendants moved for summary judgment on all claims, making a variety of arguments as to why plaintiffs' claims fail as a matter of law, including an argument regarding the specific language of Corvallis's and Philomath's charter provisions. Plaintiffs opposed the state defendants' motion and filed their own cross-motions for summary judgment. Plaintiffs' summary judgment materials included 10 declarations from Corvallis and Philomath voters and a declaration from the former deputy city attorney of Corvallis, regarding their understanding of the specific language of Corvallis's charter provision. The state moved to strike all 11 declarations as inadmissible on various grounds under the Oregon Evidence Code.

After a hearing, the trial court granted the state defendants' motions and denied plaintiffs' motions. The court provided its reasoning in a detailed letter opinion. The court struck the declarations as irrelevant for purposes of construing the charter, as containing inadmissible hearsay, and as not based on personal knowledge. As to the summary judgment motions, the court first addressed plaintiffs' as-applied constitutional challenge, concluding that the state had not engaged in any enforcement action against plaintiffs that would permit an as-applied challenge. The court then addressed plaintiffs' facial challenge and determined that, at a minimum, ORS 222.127 is not unconstitutional as to cities such as Corvallis and Philomath, whose charters' annexation provisions contain specific language—"[u]nless mandated by state law"—that avoids any potential conflict between the statute and the charter. Finally, the court addressed the constitutionality of ORS 222.127 as to cities whose charters do not include such language, as relevant to another plaintiff,[5] and concluded that ORS 222.127 does not violate the home-rule provisions of the Oregon Constitution as to those cities either.

The trial court entered a written order consistent with its letter opinion. It then entered a general judgment. The general judgment refers to the summary judgment order, states that there are "no further factual or legal issues to resolve," and grants judgment "to defendants"; it contains no declarations. Plaintiffs appeal.

## III.   ANALYSIS

Plaintiffs raise three assignments of error on appeal, only two of which we address. *See* 304 Or App at 175 n 3. In their first assignment of error, plaintiffs argue that the trial court erred in rejecting their facial challenge to ORS 222.127. In their third assignment of error, plaintiffs argue that the trial court erred in rejecting their as-applied challenge to ORS 222.127 and in striking the 11 declarations from the summary judgment record.

---

[5] As previously noted, LOC was a plaintiff-intervenor but is not a party on appeal. The trial court therefore had to resolve LOC's claims, whereas we do not.

As the state correctly notes, plaintiffs' assignments of error do not comport with ORAP 5.45(3). *See AS 2014-11 5W LLC v. Caplan Landlord, LLC*, 273 Or App 751, 769, 359 P3d 1225 (2015) ("Under ORAP 5.45, each assignment of error should identify one—and only one—ruling that is being challenged." (Internal quotation marks omitted.)).[6] Nonetheless, it is clear from the opening brief which rulings plaintiffs are challenging, and it is evident from the answering brief that the state defendants' ability to respond has not been compromised. We therefore proceed to the merits. *See Village at North Pointe Condo. Assn. v. Bloedel Constr.*, 278 Or App 354, 359-61, 374 P3d 978, *adh'd to as modified on recons*, 281 Or App 322, 336, 383 P3d 409 (2016).

In doing so, we understand the first assignment of error to challenge two rulings, as related to plaintiffs' facial challenge to ORS 222.127: the grant of the state defendants' motion for summary judgment and the denial of plaintiffs' motions for summary judgment. We understand the third assignment of error to challenge three rulings, as related to plaintiffs' as-applied challenge to ORS 222.127: the grant of the state defendants' motion for summary judgment, the grant of the state defendants' motion to strike, and the denial of plaintiffs' motions for summary judgment.

A.   *Facial Challenge to ORS 222.127*

A statute is facially unconstitutional if it "is incapable of constitutional application in any circumstance." *Jensen v. Whitlow*, 334 Or 412, 421, 51 P3d 599 (2002); *see also State v. Christian*, 354 Or 22, 40, 307 P3d 429 (2013) ("Our analysis of defendant's facial challenge is limited to whether the ordinance is capable of constitutional application in any circumstance."); *Northrup v. Hoyt*, 31 Or 524, 529, 49 P 754 (1897) (if a statute may constitutionally operate upon certain persons or cases, it is not unconstitutional

---

[6] As we intermittently remind parties, legal conclusions and points of legal analysis are not "rulings" to be divided into multiple assignments of error. *E.g.*, *Rutter v. Neuman*, 188 Or App 128, 132, 71 P3d 76 (2003). Conversely, challenges to multiple rulings should not be combined into a single assignment of error. *E.g.*, *Landauer v. Landauer*, 221 Or App 19, 23-24, 188 P3d 406 (2008) ("The grouping of a trial court's rulings under a single assignment of error hinders evaluation of each individual ruling on its merits and is a practice that should not be followed.").

simply because there may be persons or cases to whom it constitutionally cannot apply). The state contends—and the trial court agreed—that ORS 222.127 is not facially unconstitutional, because, at a minimum, it is capable of constitutional application as to cities whose charters do not conflict with ORS 222.127.

As discussed in more detail later, the Supreme Court and we have repeatedly held that charter language requiring a vote of the city's electorate on annexations does not conflict with state statutes requiring annexation in particular circumstances, so long as the city's charter contains language allowing for state-mandated annexations. *See Pieper v. Health Division*, 288 Or 551, 553, 557-58, 606 P2d 1145 (1980) (holding that state health division's order requiring Corvallis to annex territory in accordance with a state statute did not conflict with Corvallis charter provision requiring electorate to vote on annexations, because the charter provision allows for annexations "mandated by state law"); *Mid-County*, 310 Or at 163-64 (rejecting constitutional challenge to state statute on which local boundary commissions relied to order certain annexations to two cities, where both cities' charters contained language that effectively allowed the state legislature to alter their borders without city approval); *Hunter v. Portland Metro. Area Local Boundary Com.*, 160 Or App 508, 510-12, 981 P2d 1276 (1999) (relying on *Mid-County* to conclude that there was no conflict between a state statute and a city charter, where the city charter expressly permitted annexation without voter approval if "mandated by state law").

It is not clear whether the constitutional challenges in *Mid-County* and *Hunter* were viewed as facial or as-applied challenges, to the extent that they required consideration of the plaintiffs' specific charter provisions. Here, the trial court construed Corvallis's and Philomath's charters as part of resolving plaintiffs' facial challenge to ORS 222.127, but plaintiffs and the state defendants address it as part of the as-applied challenge. The latter approach has intuitive appeal, in that the analysis is specific to these plaintiffs, as is typically the case for an as-applied challenge. Because it does not affect our disposition, we address plaintiffs' charter

language as part of the as-applied analysis, consistently with how the parties present it. Our construction of plaintiffs' charters is relevant to the facial challenge, however, in that it demonstrates at least two instances in which city charters do not conflict with ORS 222.127.[7]

## B.  *As-Applied Challenge to ORS 222.127*

Having concluded that ORS 222.127 is not unconstitutional on its face, so long as it may constitutionally be applied at least to cities whose charter provisions do not conflict with it, we next consider plaintiffs' claim that ORS 222.127 is unconstitutional as applied to them. We first address the state defendants' argument that, because the executive branch has not taken enforcement action against them, plaintiffs cannot assert an as-applied challenge. We next address plaintiffs' assertion that, in construing Corvallis's and Philomath's charters, we should consider 11 declarations that the trial court struck from the summary judgment record. Lastly, we construe Corvallis's and Philomath's charter provisions to determine whether the "[u]nless mandated by state law" language defeats plaintiffs' as-applied challenge.

### 1.  *Lack of enforcement action*

A prerequisite to challenging the constitutionality of a law *as applied* is that the law has been applied. That is, as relevant here, the law must have been enforced against the complainant. *City of Eugene v. Lincoln*, 183 Or App 36, 41, 50 P3d 1253 (2002) ("A facial challenge asserts that lawmakers violated the constitution when they enacted the ordinance; an as-applied challenge asserts that executive officials, including police and prosecutors, violated the constitution when they enforced the ordinance."). The state defendants successfully argued to the trial court that that prerequisite was not met in this case.

---

[7] Notably, it is apparent from the statutory language that the legislature meant ORS 222.127 to apply to all cities, including those whose charters *conflict* with the statute. *See* ORS 222.127(2) ("Notwithstanding a contrary provision of the city charter or a city ordinance, ***."). That does not change our analysis. If plaintiffs' charters do not conflict, it is possible for the statute to be constitutionally applied, at least as to them.

Plaintiffs argue that the letter that they received from DLCD in April 2016 constituted executive enforcement action. The trial court correctly rejected that argument. The letter is a statutorily required notice from DLCD regarding recently enacted land use laws that may affect local governments. *See* ORS 197.646(2)(a). It does not require anything, nor does it impose any penalty for noncompliance. Moreover, the final subsection of ORS 197.646 expressly provides that a local government's failure to take necessary action in response to new land use requirements "is a basis for *initiation* of enforcement action pursuant to ORS 197.319 to 197.335." ORS 197.646(3) (emphasis added). A notice regarding the existence of new land use requirements does not itself initiate an enforcement action.

Alternatively, plaintiffs rely on the annexation petitions that they received after the enactment of ORS 222.127. The trial court also correctly rejected that argument. Plaintiffs cite no persuasive authority for the proposition that a landowner's mere filing of an annexation petition with a city, under circumstances that require the city to decide whether to comply with a state statute or disregard it, satisfies the prerequisite for bringing an as-applied challenge against the state. It cannot be enough for an as-applied challenge for a party to be *considering* not following a state law, because, until the law is actually applied in an enforcement action, it remains to be seen how it will be applied to that party, and the crux of an as-applied challenged is the individual application. Notably, the petitioning landowners could have sought an enforcement order from Land Conservation and Development Commission (LCDC), but no such order is in the record. *See* OAR 660-045-0030 (permitting a person to petition LCDC for an enforcement order against a local government).

Normally, that would conclude our analysis of plaintiffs' as-applied challenge to ORS 222.127. For the reasons discussed earlier, however, 304 Or App at 181-82, the facial challenge and the as-applied challenge are closely intertwined in this case, so it is necessary to proceed to an analysis of plaintiffs' charters.

2.  *Stricken declarations*

Because it is relevant to what we will consider in construing Corvallis's and Philomath's charters, we next address whether the trial court erred in striking the 11 declarations from the summary judgment record. In support of their own interpretation of their charters, plaintiffs submitted 11 declarations: nine declarations from current or former Corvallis residents who voted on the 1976 charter amendment, a declaration from a current Philomath resident who voted on the 1987 charter amendment, and a declaration from the former deputy city counsel who proposed the "[u]nless mandated by state law" language included in Corvallis's 1976 charter amendment. The trial court struck all 11 declarations as irrelevant and otherwise inadmissible under the Oregon Evidence Code.

Even if we assume that the trial court's exclusion of the declarations was erroneous, any error was harmless. We may reverse a judgment only when an error "substantially affect[ed] the rights of a party," *i.e.*, was not harmless. ORS 19.415(2); *see also* OEC 103(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). Here, plaintiffs offered the 11 declarations as legislative history, which, under the applicable construction rules, is the only way that we could consider them. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing the three-step construction process of analyzing text, context, and any useful legislative history). But even assuming that we *could* consider the 11 declarations as legislative history of the charter amendments—a contested issue on which we express no opinion[8]—we *would not* consider them.

---

[8] The state argued, and the trial court agreed, that declarations of a handful of individual voters and a former deputy city attorney provided 40 years after the fact do not qualify as legislative history. *See State v. Allison*, 143 Or App 241, 251, 923 P2d 1224, *rev den*, 324 Or 487 (1996) (stating that the legislative history of a voter-initiated charter amendment "includes statements contained in the voters' pamphlet" and "other contemporaneous sources such as newspaper stories, magazine articles and other reports from which it is likely the voters would have derived information about the initiative" (internal quotation marks omitted)); *see also Salem-Keizer Assn. v. Salem-Keizer Sch. Dist. 24J*, 186 Or App 19, 27, 61 P3d 970 (2003) (explaining that courts "are all the more loath" to determine the intentions of a group by reference to isolated statements by individuals when those statements are generated after the fact, rather than contemporaneously). Plaintiffs disagree and argue that we can consider the declarations as legislative history.

That is, even assuming that the declarations qualify as "legislative history" that we may consider under *Gaines*, we are only required to consider "useful" legislative history, and "the extent of the court's consideration of that history, and the evaluative weight that the court gives it, is for the court to determine." *Id.* at 172. Applying that standard here, we would not give any evaluative weight to the 11 declarations stricken by the trial court, and their consideration would not affect our disposition. Any error in striking the declarations therefore was harmless.

### 3. *Plaintiffs' charters*

That brings us to the content of plaintiffs' charters. Charter amendments are the product of local legislation and are "to be interpreted by the same means as other legislation." *DeFazio v. WPPSS*, 296 Or 550, 569, 679 P2d 1316 (1984). That is, we consider the text, context, and any useful legislative history offered by the parties. *Gaines*, 346 Or at 171-72. In this instance, we do not find any legislative history provided by the parties to be useful, so we limit our discussion to text and context, recognizing that text is always "primary" in the analysis. *Id.* The relevant text is brief.

As previously described, Corvallis's charter provides that, "[u]*nless mandated by State law*, annexation, delayed or otherwise, to the City of Corvallis may only be approved by a prior majority vote among the electorate." Corvallis Charter of 2006, ch 10, § 53 (emphasis added). Similarly, Philomath's charter provides, that, "[u]*nless mandated by state law*, annexations to the city of Philomath may only be approved by a prior majority vote among the electorate." Philomath Charter of 1987, ch 11, § 11.1 (emphasis added).

The state defendants argue that ORS 222.127 does not conflict with plaintiffs' charter provisions, because those provisions allow for annexation without a citizen vote if mandated by state law. The trial court agreed. Relying on *Pieper* and *Mid-County*, the trial court concluded that "Section 53 of the Corvallis Charter and Section 11.1 of the Philomath [Charter] do not conflict with [ORS 222.127] because both specifically allow for annexation without a citizen vote if it is mandated by statute."

*Pieper* involved the same provision of Corvallis's charter that is at issue in this case. 288 Or at 553. In *Pieper*, the state health division ordered Corvallis to adopt an ordinance annexing certain territory to the city, pursuant to ORS 222.855, which provides for territory to be annexed "without any vote" if the state health division finds that conditions in the territory pose a danger to public health that can be removed or alleviated by provision of sanitary, water, or like facilities ordinarily provided by incorporated cities. *Id*. at 553, 556. Corvallis challenged the order, citing ORS 222.915, which provides that the health-danger annexation statutes "do not apply to proceedings to annex territory to any city if the charter or ordinances of the city conflict with or are inconsistent with" them. Corvallis argued that the statutory scheme conflicted with its charter, because its charter required a vote of the electorate on all annexations. *Id*. at 553.

We affirmed, as did the Supreme Court. *Id*. at 558. The court rejected Corvallis's argument that an annexation without the vote of the people would conflict with the intent of its charter, explaining that it arose from a false premise—"the express desire of Corvallis residents to vote on *all* annexations"—that was contrary to the express charter language, which "specifically provides that annexations 'mandated by state law' need not be approved by such a vote." *Id*. at 555 (emphasis in original). Given the express language of the charter, the "only remaining question" was "whether this annexation is one 'mandated by state law.'" *Id*. The court concluded that it was. *Id*. at 557. Because the annexation was "mandated by state law," it did not require a vote of the Corvallis electorate, and there was no conflict between the statute and the charter. *Id*.

Similarly, in *Mid-County*, local boundary commissions relied on ORS 199.534 to order the cities of Portland and Gresham to annex certain territory, and the cities sought to have the statute declared unconstitutional under the home-rule provisions of the Oregon Constitution. 310 Or at 155-56. The Supreme Court left "room to argue" in a future case that the "borders of a municipal corporation are an integral part of the corporate charter which cannot be altered by the legislature," but it concluded that Portland and Gresham could not benefit from such an argument in

*Mid-County*, given their charter language. *Id*. at 163. The Portland charter allowed annexation "in any manner permitted by statute," and the Gresham charter allowed the city's boundaries to be modified by voters, the city council, or "any other agency with legal power to modify them." *Id*. at 164. Given that language, regardless of whether the legislature could amend a city's borders "against the municipality's will,"[9] the court read Portland's and Gresham's charters "as permitting legislative alteration of their borders," and it rejected the cities' constitutional challenge. *Id*. at 163; *see also Hunter*, 160 Or App at 510-12 (relying on *Mid-County* to conclude that West Linn charter did not conflict with state law, where charter provision included "[u]nless mandated by state law" language).

Plaintiffs argue that this case is distinguishable from *Pieper* and *Mid-County*, because, in their view, those cases involved state-mandated annexation, whereas this case involves a state-mandated *process* for annexation. Like the trial court, we are unpersuaded by the distinction that plaintiffs attempt to draw.

ORS 222.127(2) provides that, if specified criteria are met, "the legislative body of the city *shall annex the territory* without submitting the proposal to the electors of the city." (Emphasis added.) An annexation under that statute is no less mandatory than an annexation under ORS 222.855, the statute at issue in *Pieper*. An annexation under ORS 222.855 is mandatory if the state health division issues an order determining that the specified criteria are met, while an annexation under ORS 222.127 is mandatory if the legislative body of the city determines that the specified criteria are met.[10] Although who determines whether the conditions

---

[9] The state has indicated that, in its view, the legislature likely can amend a city's borders against the municipality's will. Not surprisingly, plaintiffs disagree. However, we need not reach that issue or those arguments given our disposition. That is, we need not answer the question left open in *Mid-County*.

[10] Under ORS 222.127(2), the legislative body of the city "shall annex the territory" if (a) it is included within an urban growth boundary adopted by the city or Metro; (b) is or, upon annexation, will be subject to the acknowledged comprehensive plan of the city; (c) at least one lot or parcel within the territory is contiguous to the city limits or is separated from them only by a public right of way or a body of water; and (d) the proposal conforms to all other requirements of the city's ordinances.

are met is different, that does not change the fact that both types of annexations are mandatory, so long as the conditions are met. It is also notable that, even though the state health division makes the predicate finding with respect to a health-hazard annexation, the legislative body of the city still must issue an ordinance effectuating the annexation. *See* ORS 222.900(1) (requiring the city to adopt an ordinance, meeting specified criteria, "upon receipt of the certified copy of the finding as provided in ORS 222.880 (2) or (3) and certification of approval of plans under ORS 222.898").

Plaintiffs next argue that the trial court's construction of "unless mandated by state law" violates the rule against prospective delegation. *See Advocates for Effective Regulation v. City of Eugene*, 160 Or App 292, 311-12, 981 P2d 368 (1999) (holding that that rule applies to municipal charters). The rule against prospective delegation, as relevant to municipal charters, comes from three constitutional provisions: (1) Article I, section 21, which provides that no law shall pass, "the taking effect of which shall be made to depend on any authority, except as provided in this Constitution"; (2) Article XI, section 2, which empowers municipal voters to "enact and amend their municipal charter[s]"; and Article IV, section 1, which provides, as relevant here, that the initiative and referendum powers are "reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district." *Id*.

There was no prospective delegation here. As was the case in *Pieper* and *Hunter*, the plain language of plaintiffs' charter provisions demonstrates a complete legislative policy to generally require voter approval of annexation proposals *except* where state law mandates the annexation. Plaintiffs' charter provisions do not incorporate the substance of state law. *Cf. Advocates for Effective Regulation*, 160 Or App at 313 (holding that city charter provision incorporating the definition of "hazardous substances" from future federal regulations was an improper delegation of legislative authority). There is no reason that a city cannot adopt a charter provision that favors the uniformity of state law when state law exists. *See Mid-County*, 310 Or at 163 n 11, 164 (describing city charter as giving "consent and

approval" to legislative alteration of borders, and recognizing that "[t]he initial power to decree an annexation still lies where it has always been—with the legislature").

We also reject plaintiffs' argument that the trial court's construction of ORS 222.127 would allow "the exception to swallow the rule." *See 1000 Friends of Oregon v. LCDC (Tillamook Co.)*, 303 Or 430, 441, 737 P2d 607 (1987) (determining that it was not the legislature's intent, when enacting a statute, to "allow[] the exception to swallow the rule"). Given that plaintiffs' voters expressly excepted state-law-mandated annexations from the vote requirement when they added that requirement to plaintiffs' charters in 1976 and 1995, plaintiffs are not in a position to argue that their voters' intent is being disregarded when the exception is applied. Plaintiffs contend that their voters intended "[u]nless mandated by state law" to refer only to health-hazard annexations, but that narrow reading cannot be squared with the charters' plain language.[11]

Finally, Corvallis and Philomath protest that they are being compelled to annex territory against their will. The difficulty with that argument is that plaintiffs are only being compelled to do precisely what their voters provided for when they enacted the charter provisions at issue: comply with state law regarding mandated annexations. *Cf. Pieper*, 288 Or at 555 (Corvallis's argument that annexation without the vote of the people would conflict with the intent of its charter was fallacious because it rested on the false premise that Corvallis residents expressly desired to vote on all annexations, when in fact the charter specifically provided that annexations "mandated by state law" did not require voter approval). If plaintiffs' voters are dissatisfied with the existing charter provisions, then amendment is

---

[11] Like the trial court, we also reject plaintiffs' argument that the "state law" language in their charters should be construed to refer only to the state law that existed at the time of the charter amendments, *i.e.*, 1976 for Corvallis and 1995 for Philomath. *See Seale et al v. McKinnon*, 215 Or 562, 572, 336 P2d 340 (1959) (explaining that a statutory provision that references another law with specificity should be construed to adopt the law as it existed at the time of the legislative enactment, while a statutory provision that refers to another body of law generally should be construed as incorporating both the law that existed at the time of enactment and any subsequent changes to the law).

always possible, or, as the state notes, plaintiffs could seek to have their charter provisions invalidated.[12]

For all of those reasons, plaintiffs have not identified any grounds for reversal with respect to their constitutional challenge to ORS 222.127 as applied to them.

## IV.   CONCLUSION AND DISPOSITION

Accordingly, we affirm the trial court's grant of the state defendants' motion for summary judgment, grant of the state defendants' motion to strike, and denial of plaintiffs' cross-motions for summary judgment.

The judgment is defective in one regard, however, which is that it does not contain a declaration of the parties' rights. "If there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to what it believes its rights to be." *Beldt v. Leise*, 185 Or App 572, 576, 60 P3d 1119 (2003). When a trial court dismisses a declaratory judgment claim after deciding it on the merits, it is our practice to vacate and remand for correction of the judgment, even if we are affirming on the merits. *Kramer v. City of Lake Oswego*, 285 Or App 181, 215-16, 395 P3d 592 (2017), *aff'd in part and rev'd in part*, 365 Or 422, 446 P3d 1, *adh'd to as modified on recons*, 365 Or 691, 455 P3d 922 (2019); *see also Doe v. Medford School Dist. 549C*, 232 Or App 38, 46, 221 P3d 787 (2009) ("When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim ***, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits.").

Here, the trial court granted judgment to defendants, rather than dismissing plaintiffs' claims, but the same principle applies. The correct disposition of a declaratory judgment claim is to enter a judgment declaring the

---

[12] On appeal, plaintiffs suggest that, if their charter provisions allow for application of ORS 222.127, then those provisions are unconstitutional, while the state disagrees that the charter provisions are unconstitutional but notes that plaintiffs "may seek to invalidate those provisions," which they have not done in this case. We need not get into the specifics of an issue that is not before us.

parties' rights. *De Lanoy v. Taylor*, 300 Or App 517, 520, 452 P3d 1036 (2019) (when a "party asks for a declaration, it is incumbent on the court to declare the respective rights of the parties"). Plaintiffs are entitled to a declaration, even if it is not the declaration they want. *Beldt*, 185 Or App at 576. Accordingly, we vacate and remand for the trial court to enter a judgment that declares the rights of the parties. Any declarations should be consistent with this opinion but need not be limited to the issues addressed in this opinion.[13]

Vacated and remanded for entry of a judgment that declares the rights of the parties.

---

[13] In other words, the trial court may make declarations consistent with its own letter opinion of February 2017, as appropriate, even if they go beyond the scope of this opinion, so long as they do not conflict with this opinion.